# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JONI FONTENOT | * | CIVIL ACTION NO. 2:16-CV-84 |
| | * | |
| v. | * | |
| | * | JUDGE BROWN |
| SAFETY COUNCIL OF SOUTHWEST | * | |
| LOUISIANA | * | |
| | * | MAGISTRATE JUDGE KAY |
| | * | |
| | * | |

**************************************************************************

## <u>ORDER</u>

In this litigation, Plaintiff Joni Fontenot ("Fontenot") alleges that her employer, Safety Council of Southwest Louisiana ("Safety Council"), is paying her different wages compared to those of a male employee who performed substantially the same work, in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d).[1] Fontenot also alleges that she was retaliated against by Safety Council after she complained about the discrimination, in violation of 29 U.S.C. § 215.[2] Before the Court is Fontenot's "Motion for Partial Summary Judgment" on the issues of whether she has waived her EPA claim and whether she has put forth a *prima facie* case under the EPA.[3] Having considered the pending motion, the memoranda in support and in opposition, the record, and the applicable law, and because Safety council does not point to any contrary evidence but, rather, argues its own affirmative defenses, the Court will grant the motion.

---

[1] Rec. Doc. 1.

[2] *Id.*

[3] Rec. Doc. 27.

1

# I. Background

## A.    *Factual Background*

Safety Council is a non-profit 501(c)(3) organization dedicated to cost effective services for Southwest Louisiana industrial and contractor businesses.[4] Fontenot is a female employed by Safety Council in the position of Chief Operating Officer ("COO").[5] Fontenot began in this position upon entering into a three-year contract on October 19, 2011.[6] The terms of the agreement ("Employment Contract"), including compensation and duties, are memorialized in the contract.[7] Fontenot was offered a starting salary of $95,000.[8] The Employment Contract was renewed for an additional three years on October 19, 2014, when neither party issued a statement of non-renewal under the terms of the Employment Contract.[9] Prior to Fontenot's employment as COO, Robert J. McCorquodale ("McCorquodale") served as Chief Executive Officer ("CEO") of Safety Council.[10] McCorquodale served in this position from 2005 to 2011.[11] McCorquodale's 2005 contract set his base salary at "$89,426.53 to be increased by 3% January 1[,] 2005 and each January 1st thereafter by a minimum of 3% up to 6% depending on the financial condition of the Safety Council upon approval by the President of the Executive Board."[12] In 2009, McCorquodale's W-2 reflected that

---

[4] Joint Pretrial Statement (Rec. Doc. 24), para. 7.

[5] *Id.* at paras. 3, 7.

[6] *Id.* at para. 7.

[7] *Id.*

[8] Rec. Doc. 33 at 4; Rec. Doc. 27-2 at11.

[9] Rec. Doc. 24 at para. 7.

[10] *Id.*

[11] *Id.* Safety Council contends that McCorquodale was Safety Council's "head executive" beginning in 2001 and entered into the position of CEO in 2005. Rec. Doc. 33 at 2.

[12] Rec. Doc. 33-4 at 296.

he earned $165,480.02,[13] and, in 2010, his W-2 reflected that he earned $165,431.37.[14] Safety Council asserts that McCorquodale resigned in 2011 after Safety Council discovered that McCorquodale had been paying himself unauthorized amounts unbeknownst to Safety Council's executive board.[15]

On November 10, 2015, Fontenot, through her attorney, made a demand on Safety Council, asserting that it was in violation of the EPA, 29 U.S.C. § 206(d)(1).[16] On January 19, 2016, Fontenot, through her attorney, filed suit against Safety Council alleging a violation of the EPA and further alleging that Safety Council retaliated against her after her assertion of her EPA claim.[17]

Specifically, Fontenot alleges that Safety Council provided her with a lower compensation package, including a lower salary, smaller incremental increases in salary, and fewer benefits, than her male predecessor, McCorquodale, despite the fact that their job responsibilities were substantially equal.[18] Fontenot further alleges that Safety Council's discriminatory practices are "fixed, systematic, and continuing in nature," which she alleges is evidence of a willful violation of the law, and thus expands the statute of limitations for an EPA claim from two years to three years.[19] Finally, Fontenot alleges that Safety Council retaliated against her after she raised the issue of an EPA violation by "beginning to treat her differently and refusing to pay her a bonus for the

---

[13] Rec. Doc. 27-8.

[14] Rec. Doc. 27-9.

[15] Rec. Doc. 33 at 2-3.

[16] Rec. Doc. 24 at para. 7.

[17] *Id.*

[18] Rec. Doc. 1 at para. 10.

[19] *Id.* at para. 11.

year of 2015," despite the fact that she had received a bonus each year prior.[20] Fontenot seeks damages equivalent to the amount of wages and benefits withheld, an equal amount in liquidated damages, reasonable attorney's fees, costs associated with this litigation, and compensatory and punitive damages related to Safety Council's retaliatory activity.[21] On January 26, 2016, after filing her Complaint, Fontenot received a $6,000 bonus for the year 2015.[22]

On February 23, 2016, Safety Council filed an Answer to the Complaint, denying the allegations and alleging affirmative defenses.[23] Specifically, Safety Council alleges that Fontenot failed to state a claim upon which relief may be granted; that there is a two-year limitations period for an EPA claim; that any pay differential between Fontenot and her predecessor was the result of a voluntary agreement by Fontenot; that any pay differential between Fontenot and her predecessor was based on factors and circumstances other than gender; and that the claims alleged in the Complaint are barred, in whole or in part, by the EPA's affirmative defense precluding liability for unequal pay that results from compensation differentials based on factors other than sex.[24]

### B.    *Procedural Background*

On January 19, 2016, Fontenot filed a Complaint against Safety Council in the Western District of Louisiana.[25] The case was assigned to Judge Minaldi in the Lake Charles Division.[26]

---

[20] *Id.* at para. 13.

[21] *Id.* at paras. 12, 15.

[22] Rec. Doc. 24 at para. 7.

[23] Rec. Doc. 4.

[24] *Id.* at 3–4.

[25] Rec. Doc. 1.

[26] Rec. Doc. 2.

Safety Council filed an Answer on February 23, 2016.[27] The case was set for trial on May 22, 2017.[28] On March 14, 2017, the trial date was continued to August 21, 2017.[29] The case was reassigned to Judge Brown of the Eastern District of Louisiana on March 15, 2017, with an order that the Local Rules of the Western District of Louisiana continue to apply to the case.[30]

On May 23, 2017, Fontenot filed a "Motion for Partial Summary Judgment" seeking summary judgment on two issues: (1) that she had not waived her EPA claim; and (2) that she had presented a *prima facie* case of a violation of the EPA.[31] On June 2, 2017, Safety Council filed a response in opposition to the "Motion for Partial Summary Judgment."[32] With leave of Court, Fontenot filed a reply in support of the "Motion for Partial Summary Judgment" on June 6, 2017.[33]

## II. The Parties' Arguments

### A.   *Fontenot's Arguments in Support of the Motion for Partial Summary Judgment*

In the motion, Fontenot argues that summary judgment is appropriate as to two issues: (1) that Fontenot did not waive her claim under the EPA; and (2) that she has proven her *prima facie* case that Safety Council paid unequal wages to Fontenot and a male comparator, McCorquodale, for work performed under similar working conditions that required substantially equal skills, effort, and responsibility.[34]

---

[27] Rec. Doc. 4.

[28] Rec. Doc. 10.

[29] Rec. Doc. 18.

[30] Rec. Doc. 19.

[31] Rec. Doc. 27.

[32] Rec. Doc. 33.

[33] Rec. Doc. 35.

[34] Rec. Doc. 27 at 1.

### 1.      Equal Pay Act Claims Cannot Be Waived

First, Fontenot claims that although she acted freely when entering into her Employment Contract with Safety Council, her rights under the EPA cannot be waived.[35] Fontenot avers that when she contracted with Safety Council on October 19, 2011, to begin her position as COO, she was not aware of any rights she might have under the EPA.[36] She also contends that Safety Council did not mention any rights she might have under the EPA and that she did not intend to waive any such rights.[37]

Fontenot argues that there are "hundreds of reported EPA cases" that involve employment situations where the employee freely entered into his or her employment situation.[38] Fontenot claims that, logically, if a plaintiff who voluntarily entered into an employment contract were barred from bringing an EPA claim, then EPA claims would only lie where an employee accepted a job under duress.[39] Fontenot cites *Boaz v. FedEx Customer Information Services, Inc.* for the proposition that an employee's claims under the EPA cannot be waived.[40] In *Boaz*, Fontenot asserts that the Sixth Circuit reasoned that Congress's placement of the EPA within the Fair Labor Standards Act ("FLSA") was presumably purposeful; that prior to the enactment of the EPA, the United States Supreme Court had held that employees cannot waive their FLSA claims; and that, as a part of the FLSA, it is presumable that Congress meant for EPA claims to be equally

---

[35] Rec. Doc. 27-2 at 7.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 8.

[39] *Id.*

[40] *Id. (citing* 725 F.3d 603, 607 (6th Cir. 2013)).

unwaivable.[41] Fontenot further represents that the Sixth Circuit continued that "the Supreme Court's rationale for barring waiver of FLSA claims appears fully applicable to claims under the Equal Pay Act," namely to raise the depressed wages of women to serve the interest of justice and "as a matter of market economics."[42]

### 2.    *Prima Facie* Case of Pay Discrimination

Second, Fontenot contends that the duties she performs as COO are substantially the same as those performed by McCorquodale as CEO, but that they received different pay.[43] Fontenot submits as evidence Safety Council's 2007 by-laws, which describe the responsibilities of the CEO when McCorquodale was in that position, and Safety Council's 2012 by-laws, which describe the responsibilities of the COO when Fontenot was COO.[44] Fontenot contends that the responsibilities of the CEO described in the 2007 by-laws are exactly the same as the responsibilities of the COO described in the 2012 by-laws.[45] Fontenot further describes the responsibilities of McCorquodale and Fontenot to show they are exactly the same[46] and submits the affidavits of four Safety Council employees who worked during McCorquodale's and Fontenot's tenures, and who declare that, from their professional observations, Fontenot assumed the same responsibilities that McCorquodale had during his tenure as CEO.[47] Finally, Fontenot submits as evidence McCorquodale's 2005 Employment Contract with Safety Council stating that Fontenot now

---

[41] *Id.* (quoting *Boaz*, 725 F.3d at 607).

[42] *Id.* at 8–9 (quoting *Boaz*, 725 F.3d at 607).

[43] *Id.* at 9–11.

[44] *Id.* at 9 (citing Exhs. 9, 10).

[45] *Id.*

[46] *Id.* ("He handled the budgets. She handles the budgets.").

[47] Rec. Doc. 27-2 at 9 (citing Exhs. 2, 3, 4, 5).

performs "each and every one" of the duties listed therein.[48] Fontenot contends that Safety Council's director, Larry DeRoussel, who was on the committee that hired her, advised her that only the title of the job was being changed, from Chief Executive Officer to Chief Operating Officer, and that the board of directors has never advised her that she is doing work outside of the scope of her position.[49]

In anticipation of Safety Council's argument that McCorquodale had an additional responsibility to maintain public relations and develop new business, Fontenot cites to her Employment Contract, which includes as one of her duties "generating revenues" through "development, marketing, and fulfillment of programs."[50] Fontenot further claims that McCorquodale hired someone to whom he could delegate these duties and that this person continued in this position through Fontenot's tenure until she let him go in 2015.[51] Fontenot cites *Wojciechowski v. National Oilwell Varco, L.P.* for the proposition that an assessment of equal work is a factual determination that requires looking to the actual job content to corroborate position titles and descriptions, which may include comparing the "common core of tasks" and assessing whether their differences make the work "substantially different."[52] Based on the evidence and proposed assessment put forth by Fontenot, she moves the Court to find that McCorquodale and Fontenot, as proper comparators under an EPA claim, performed work that required equal skill, effort and responsibility under similar working conditions.[53]

---

[48] *Id.* at 10 (citing Exh. 11).

[49] *Id.*

[50] *Id.* at 10 (citing Exh. 12).

[51] *Id.*

[52] *Id.* at 10–11 (citing 763 F. Supp. 2d 832, 849 (S.D. Tex. 2011)).

[53] *Id.* at 11.

Fontenot contends that a comparison of McCorquodale's and Fontenot's compensation shows that they were paid differently by Safety Council for substantially similar work.[54] Fontenot submits two of McCorquodale's W-2s during his tenure as CEO of Safety Council, which show that he earned roughly $165,400 in 2009 and 2010.[55] Fontenot avers that these W-2s do not reflect fringe benefits.[56] Fontenot submits her W-2 for 2015 when she was COO of Safety Council, which states that she earned $89,867.70.[57] Fontenot argues that the differences as reflected in the W-2s of McCorquodale and Fontenot prove that she was paid unequal wages for substantially the same work.[58]

**B.    *Safety Council's Opposition to the Motion for Partial Summary Judgment***

**1.    Waiver of an Equal Pay Act Claim**

Safety Council does not contest Fontenot's assertion that she has not waived her claim under the EPA.[59] Safety Council argues that the real issue, which it contends is a question for the jury, is whether it has a valid affirmative defense that "any pay differential between McCorquodale and Fontenot was the result of voluntary and consensual negotiations between Fontenot and Safety Council which were unrelated to Fontenot's gender (as well as attributable to a multitude of other non-gender related factors)."[60] To this end, Safety Council notes two affirmative defenses it pleads in its Answer: (1) that Fontenot's voluntary agreement to accept the position of COO under the

---

[54] *Id.*

[55] *Id.* (citing Exhs. 6, 7).

[56] *Id.* at n. 1.

[57] *Id.* (citing Exh. 8).

[58] *Id.*

[59] Rec. Doc. 33 at 10.

[60] *Id.*

contractual terms bars her from subsequently complaining about the agreed upon pay rate;[61] and (2) that any pay differential between Fontenot and McCorquodale were based on factors and circumstances other than gender.[62]

Safety Council argues that pay disparities are allowed under: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex."[63] Safety Council further argues that the fourth exception, the "catch-all exception," includes pay disparities that result from negotiations and agreement of the parties.[64] Safety Council cites several cases from other jurisdictions, in which Safety Council represents that no violation of the EPA was found where disparity of pay was due to negotiations.[65] Specifically, Safety Council discusses an Eighth Circuit case, *Horner v. Mary Institute*, in which the Eighth Circuit held that salary negotiation was a factor other than sex allowing a pay disparity where a private school paid a male physical education instructor $1,500 more per year than the female plaintiff because the male instructor, unlike the female plaintiff, refused to accept the school's initial offer.[66] Safety Council also cites *McNierney v. McGraw-Hill,*

---

[61] The Court notes that this affirmative defense may seem to raise the issue of whether Fontenot has waived her EPA claim by voluntarily entering into the contract with Safety Council. However, the Court also notes that Safety Council does not pursue this argument, stating: "Whether Fontenot's Equal Pay Act claim was 'waived' is not at issue in this matter. Toward that end, the Safety Council will not request any type of jury instruction that Fontenot has 'waived' an EPA claim." *Id.* Safety Council then makes the argument that the issue is whether Fontenot's negotiations and voluntary acceptance of the contract constitute a valid affirmative defense. *Id.*

[62] *Id.* at 7–8.

[63] *Id.* at 8 (quoting *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983)).

[64] *Id.* (citing *Reznick v. Associated Orthopedics & Sports Medicine, P.A.*, 104 F. App'x 387, 391–92 (5th Cir. 2004)).

[65] *Id.* at 8–9 (citing *E.E.O.C. v. Louisiana Network, Inc.*, 809 F.Supp. 1210 (M.D. La. 1992); *Suter v. Univ. of Texas at San Antonio*, 859 F.Supp. 2d 851 (W.D. Tex. 2012); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1462 (7th Cir. 1994); *E.E.O.C. v. Home Depot U.S.A., Inc.*, No. 4:07CV0143, 2009 WL 395835, at *10 (N.D. Ohio Feb. 17, 2009)).

[66] Rec. Doc. 33 at 9 (citing 613 F.2d 706, 714 (8th Cir. 1980)).

*Inc.* in which a court in the District of Maryland stated that summary judgment was appropriate where there was evidence that a female who was offered the same initial salary as the male plaintiff, actually received a higher salary after negotiation.[67]

In response to Fontenot's reliance on the Sixth Circuit's holding in *Boaz* that an EPA claim is unwaivable, [68] Safety Council distinguishes the facts before the court in *Boaz* from those in the instant case, contending that the Sixth Circuit considered a contractual agreement that shortened the limitations period provided in the statute to six months.[69] Safety Council argues that the facts in *Boaz* are not at issue in this case because it does not contend that Fontenot's contract contained a provision eliminating her rights under the EPA, and further states that "[w]hether Fontenot's Equal Pay Act claim was 'waived' is not at issue in this matter."[70] Rather, Safety Council argues that the issue is whether Fontenot's negotiations to enter her position as COO provide Safety Council an affirmative defense as a factor "other than sex," a proposition it contends its case citations support.[71]

Safety Council contends that Fontenot voluntarily and consensually negotiated for her salary and accepted the terms.[72] Safety Council cites Fontenot's deposition testimony to support its argument that she voluntarily accepted her position and the associated salary and that her salary as COO and the bonuses she received during her tenure were more than she previously earned.[73]

---

[67] Rec. Doc. 33 at 9 (quoting 919 F.Supp. 853, 860 (D. Md. 1995)).

[68] 725 F. 3d at 607.

[69] Rec. Doc. 33 at 7.

[70] *Id.* at 9-10.

[71] *Id.* at 10.

[72] *Id.* at 9–10.

[73] *Id.* at 4–5.

Safety Council also cites Fontenot's deposition testimony to argue that Fontenot was pleased that she got the job and a pay increase from her previous position and that she did not express dissatisfaction with Safety Council's president or executive board at the time she accepted the job as COO.[74] In conclusion, Safety Council does not contest Fontenot's argument that she has not waived her EPA claim, but rather argues its affirmative defense that, Fontenot's "voluntary and consensual negotiations," *inter alia*, is a factor "other than sex" in the determination of Fontenot's compensation.[75]

### 2. *Prima Facie* Case of Pay Discrimination

Safety Council does not dispute that Fontenot "performs duties similar to those previously performed by McCorquodale."[76] Safety Council argues, however, that the facts of this case present a *res nova* issue regarding the element of whether Fontenot and McCorquodale were paid differently because Fontenot is attempting to compare her pay rate to a predecessor who paid himself more than he was authorized to and for which the salary and contract were subsequently intentionally changed by Safety Council to prevent unauthorized payments from occurring again.[77]

Safety Council argues that the amounts reflected in McCorquodale's W-2s are improperly inflated because he was paying himself unauthorized amounts.[78] Safety Council further contends that Fontenot's 2015 W-2 reflects a deflated salary because the amount reflects reductions for her pre-tax health insurance and pre-tax 401(k) contributions, providing as evidence the sworn affidavit of John McDonald, a Certified Public Accountant ("CPA") whose firm provides

---

[74] *Id.* at 5.

[75] *Id.* at 10.

[76] *Id.* at 11.

[77] *Id.* at 12.

[78] *Id.* at 11.

accounting and tax services for Safety Council.[79] Safety Council contends that Fontenot knows that the comparison, as she presented it, is inaccurate, because she knew McCorquodale was paying himself in excess of what was authorized.[80] Safety Council argues that Fontenot's assertion that McCorquodale was being paid twice as much as her is a conclusion based on the distorted salaries represented in their respective W-2s.[81]

Attempting to provide the Court with a comparison of Fontenot's and McCorquodale's pay using what it presents as the "correct and authorized salary" for McCorquodale, Safety Council contends that McCorquodale's authorized salary in the year before his resignation, his tenth year in the position, should have been between $100,000 and $110,000.[82] Safety Council contends that McCorquodale's approved salary would have been approximately $92,000 to $95,000 in his sixth year.[83] According to Safety Council, McCorquodale's pay increases were due to an annual pay raise built in to his contract, which Safety Council eliminated after McCorquodale's resignation.[84] Safety Council asserts that Fontenot earned $95,000 in her first year as COO.[85]

Using these figures to compare, Safety Council concedes that Fontenot, in her first year, has a lower salary than what Safety Council asserts McCorquodale should have been paid in his tenth year under the terms of his contract, but maintains that Fontenot's pay is equal to what

---

[79] *Id.* (citing Affidavit of John H. McDonald (Rec. Doc. 33-1)).

[80] *Id.* at 11.

[81] *Id.* at 12.

[82] *Id.* Presumably, Safety Council contends that although McCorquodale became CEO in 2005 his tenure in the position began in 2001 when he was "head executive." *See* Rec. Doc. 33 at 2.

[83] *Id.* at 13.

[84] *Id.* at 12-13.

[85] *Id.* at 13.

McCorquodale should have been making in his sixth year under the terms of his contract.[86] Safety Council contends that the fact that McCorquodale's W-2s show an unauthorized, inflated salary and that Safety Council purposely changed the contract to prevent such excesses when hiring McCorquodale's successor demonstrate that there is a dispute as to whether McCorquodale is a proper comparator regarding wage disparity under the EPA such that summary judgment on this issue is inappropriate.[87]

### C. Fontenot's Reply in Support of "Partial Summary Judgment"

#### 1.    EPA Claims Cannot Be Waived

In Fontenot's Reply, she claims that Safety Council concedes in its brief that it is not asserting that Fontenot has waived her EPA claim.[88] Fontenot, therefore, requests that the Court enter summary judgment in her favor on the issue of whether she waived her EPA claim when she contracted with Safety Council.[89]

#### 2.    *Prima Facie* Case of Pay Discrimination

Fontenot replies that Safety Council has conceded that Fontenot and McCorquodale performed substantially the same work.[90] In addressing the issue of different pay, Fontenot argues that Safety Council contends that the proper comparison to determine a wage disparity is what the employer *intended to* pay as opposed to what the employer *actually* paid.[91] Fontenot argues this is not the law, citing the Supreme Court, which she represents "ha[s] decided that it is the employer,

---

[86] *Id.*

[87] *Id.*

[88] Rec. Doc. 35 at 1.

[89] *Id.*

[90] *Id.*

[91] *Id.* at 2 (emphasis in original).

not the employee, who must prove that the ***actual*** disparity is not sex linked."[92] Fontenot further

cites the Code of Federal Regulations for the meaning of "wages" under the EPA.[93] Fontenot

contends this includes:

> all payments made to [or on behalf of] an employee as remuneration
> for employment. The term includes all forms of compensation
> irrespective of the time of payment, whether paid periodically or
> deferred until a later date, and whether called wages, salary, profit
> sharing, expense account, monthly minimum, bonus, uniform
> cleaning allowance, hotel accommodations, use of company car,
> gasoline allowance, or some other name. Fringe benefits are deemed
> to be remuneration for employment.[94]

Fontenot argues that Safety Council's arguments regarding the reasons that McCorquodale was

paid more are not appropriate at this stage.[95] Fontenot contends that she has made her *prima facie*

case that she was paid differently than her male predecessor for doing the same work.[96]

### III. Law and Analysis

#### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits

show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."[97] When assessing whether a dispute as to any material fact exists, the Court

considers "all of the evidence in the record but refrains from making credibility determinations or

weighing the evidence."[98] All reasonable inferences are drawn in favor of the nonmoving party,

---

[92] *Id.* (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 248 (1989) (emphasis added in Plaintiff's brief)).

[93] *Id.* (quoting 29 C.F.R. § 1620.10).

[94] *Id.* at 2–3 (quoting 29 C.F.R. § 1620.10).

[95] *Id.* at 3.

[96] *Id.*

[97] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[99] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[100] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[101]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[102] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[103] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[104] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[105] Rather, a factual dispute

---

[98] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[99] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[100] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[101] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[102] *Celotex*, 477 U.S. at 323.

[103] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[104] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[105] *Little*, 37 F.3d at 1075.

precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[106] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[107]

### B.  Equal Pay Act

The Equal Pay Act prohibits an employer from discriminating between employees on the basis of sex by:

> paying wages to employees [in a covered establishment] at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....[108]

Thus, for a plaintiff to prevail on an Equal Pay Act claim, she must make a *prima facie* case (1) that she was paid differently than a male; (2) that she and the male employee performed equal work on jobs the performance of which requires equal skill, effort, and responsibility; and (3) that such work was performed under similar working conditions.[109] "'Once a plaintiff has made her *prima facie* case by showing that an employer compensates employees differently for equal work,

---

[106] *Smith v. Amedisys Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[107] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[108] 29 U.S.C. § 206(d)(1);  *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 723 (5th Cir. 2011)

[109] *Id.*; *see also Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986).

the burden shifts to the defendant to' show by a preponderance of the evidence that the differential in pay was made pursuant to one of the four enumerated exceptions."[110]

## C.  Analysis

### 1.  Whether Fontenot Waived her Claim Under the Equal Pay Act

Fontenot contends that she has not waived her EPA claim by freely entering into her contract with Safety Council,[111] and Safety Council does not dispute this.[112] Nevertheless, the Court notes the supporting case law that an EPA claim cannot be waived. The EPA was enacted in 1963 and incorporated into the Fair Labor Standards Act ("FLSA") of 1938 at 29 U.S.C. § 206(d).[113] Prior to the EPA's enactment, the Supreme Court held that an employee's rights under the FLSA are unwaivable.[114] The Fifth Circuit has not directly addressed the issue of whether a plaintiff may waive an EPA claim, however, it has recently recognized that "[t]he general rule establishes that FLSA claims . . . cannot be waived."[115] Furthermore, the Sixth Circuit and Eleventh Circuit have considered the issue of whether an employee can explicitly waive an EPA claim,

---

[110] *King*, 645 F.3d at 723 (quoting *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001)).

[111] Rec. Doc. 27-2 at 9.

[112] Rec. Doc. 33 at 10.

[113] 77 Stat. 56 (1963).

[114] *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."); *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America*, 325 U.S. 161, 167 (1945) ("Congress intended…to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the [Fair Labor Standards] Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.").

[115] *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 164 (5th Cir. 2015).

concluding that allowing such a waiver would be against the legislative policy underlying the EPA.[116]

The Court also notes that while Safety Council asserts that it does not contest Fontenot's argument that she has not waived her right to bring an EPA claim by entering into the contract freely, it asserts its affirmative defense that her compensation was based on a factor other than sex because, *inter alia*, she negotiated for her compensation.[117] However, the raising of an affirmative defense is not relevant to a plaintiff's right to bring an action under the EPA, and Safety Council has not brought a cross motion for summary judgment in its favor on its affirmative defense. Both Supreme Court and Fifth Circuit precedent indicate that a claim under the EPA, which is incorporated within the FLSA, may not be waived.[118] Accordingly, because no genuine issue of material fact exists and because Safety Council does not dispute that Fontenot has not waived her EPA claim, the Court will grant Fontenot's motion to the extent that it requests summary judgment in Fontenot's favor that she has not waived her claim under the EPA.

### 2. Whether Fontenot has Presented a *Prima Facie* Case of Pay Discrimination under the EPA

Fontenot argues that she has presented a *prima facie* case of wage discrimination because she and her predecessor, McCorquodale, performed equal work but were paid differently.[119] Safety Council concedes that Fontenot and McCorquodale performed similar work.[120] However, Safety

---

[116] *See Boaz*, 725 F.3d at 607 (reasoning that when Congress enacted the EPA it was aware of the law relevant to the FLSA and intended for EPA claims to be unwaivable by placing it within the FLSA); *see also Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 906 (11th Cir. 1987) (stating in dicta that allowing an employee to prospectively waive her rights under the EPA would thwart the EPA's legislative policy).

[117] Rec. Doc. 33 at 10.

[118] *See Brooklyn Sav. Bank*, 324 U.S. at 707; *Jewell Ridge Coal Corp.*, 325 U.S. at 167; *Bodle*, 788 F.3d at 164.

[119] Rec. Doc. 27.

[120] Rec. Doc. 33 at 11.

Council argues that it is inappropriate to grant summary judgment on the issue of whether Fontenot and McCorquodale were paid differently because McCorquodale paid himself more than he was authorized to be paid.[121]

The Court first considers whether Fontenot has proven her *prima facie* case as to the second and third elements because these elements are not disputed. Fontenot argues that as COO she was paid differently than her predecessor, McCorquodale, for performing equal work requiring equal skill, effort, and responsibility under similar working conditions.[122] Fontenot cites Safety Council's by-laws in place during their respective tenures, McCorquodale's and Fontenot's respective contracts, and affidavits of subordinate employees to prove that she and McCorquodale were responsible for the same duties requiring equal skill, effort and responsibility under similar working conditions.[123] Safety Council does not dispute that Fontenot and McCorquodale performed similar work.[124] Moreover, Safety Council does not present any evidence to contradict Fontenot's evidence that Fontenot and McCorquodale performed the same duties under similar working conditions. Therefore, there is no genuine issue of material fact as to the second and third elements required for a *prima facie* case of wage discrimination under the EPA.

As to the first element, *i.e.* whether Fontenot was paid differently than a male employee, Fontenot contends that she was paid less than McCorquodale, her male predecessor.[125] In support of this contention, Fontenot submits McCorquodale's 2009 and 2010 W-2s showing that he made

---

[121] *Id.* at 13.

[122] Rec. Doc. 27.

[123] Rec. Doc. 27-2 at 9-10.

[124] Rec. Doc. 33 at 11 (Safety Council's Opposition) ("Frankly, the Safety Council does not dispute that Plaintiff performs duties similar to those previously performed by McCorquodale.").

[125] Rec. Doc. 27.

$165,480.02 and $165,431.37, respectively, and Fontenot's 2015 W-2 showing she made $89,867.70.[126] Fontenot further contends that the W-2s do not account for benefits McCorquodale received that are not reflected in a W-2, which she asserts makes the pay differential even greater.[127]

In response, Safety Council claims that the W-2s submitted by Fontenot are inappropriate to compare for the purposes of an EPA claim.[128] First, Safety Council contends that the facts present an issue of first impression because McCorquodale had been paying himself unauthorized amounts, which improperly inflated his salary over the amount he should have been paid by the terms of his contract.[129] Safety Council purports that McCorquodale's authorized salary in the last year of his ten-year tenure as chief executive should have been between $100,000 and $110,000 and between $92,000 and $95,000 during his sixth year.[130] Under this assumption, Safety Council argues that Fontenot's starting salary in her first year was equivalent to what McCorquodale's salary was in his sixth year.[131] In support of this assertion, Safety Council submits the affidavit of Safety Council's CPA, John McDonald, along with exhibits showing a hypothetical progression of McCorquodale's salary increases based on the annual pay-raise scale built into his contract.[132]

Second, Safety Council contends that Fontenot's W-2 is improperly deflated because the amount shown includes deductions for pre-tax health insurance and pre-tax 401(k)

---

[126] Rec. Doc. 27-2 at 11 (citing Exhs. 6, 7).

[127] *Id.* at n. 1.

[128] Rec. Doc. 33 at 13.

[129] *Id.* at 12.

[130] *Id.* at 12–13.

[131] *Id.* at 13.

[132] Rec. Doc. 33-1.

contributions.[133] In support of this, Safety Council submits, as an exhibit to John McDonald's affidavit, a "Payroll Summary" for Joni G. Fontenot which reflects her Total Gross Pay as $95,000.10.[134]

Considering the evidence submitted, the Court finds that Safety Council has not introduced controverting evidence that McCorquodale and Fontenot were not paid differently. Safety Council contends that this is an issue of first impression, because McCorquodale paid himself more than what his contract purportedly authorized. However, even taking Safety Council's assertion as true, that does not negate the fact—and Safety Council does not dispute—that McCorquodale was in fact paid the amount stated on his W-2. Safety Council cites to no authority to support its proposition that the Court should consider the hypothetical amounts it alleges McCorquodale should have been paid in determining whether Fontenot has presented a *prima facie* case of wage discrimination under the EPA. The plain language of the EPA prohibits an employer from discriminating on the basis of sex "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex."[135] Moreover, even if the Court were to consider only McCorquodale's wages that Safety Council claims were authorized, Safety Council has expressly conceded in its opposition to the motion that Plaintiff's salary is "$5,000 to $15,000 less than what her predecessor's approved salary should have been" in McCorquodale's tenth year as chief executive.[136]

Safety Council's arguments, rather than challenging the fact that Fontenot and McCorquodale were paid differently, provides its reasons as to *why* Fontenot and McCorquodale

---

[133] Rec. Doc. 33 at 11.

[134] Rec. Doc. 33-1.

[135] 29 U.S.C. § 206(d).

[136] Rec. Doc. 33 at 13.

were paid differently, *i.e.* its affirmative defenses to Fontenot's claim. Evidence of this sort is properly presented after the plaintiff has made her *prima facie* case and the burden shifts to the defendant to "prove by a preponderance of the evidence that the wage differential is justified by one of the four affirmative defenses set forth in the Equal Pay Act."[137] Fontenot has only moved for summary judgment on the issue of whether she made her *prima facie* case. Thus, consideration of Safety Council's proffered affirmative defenses is outside the scope of this motion. The uncontroverted evidence presented shows that McCorquodale was paid roughly $164,000 in 2009 and 2010 as reported on his W-2s, and Fontenot was paid $89,867.70 as reported on her W-2.[138] As Safety Council has not presented any evidence to controvert Fontenot's evidence that Fontenot and McCorquodale were paid differently, the Court finds there is no genuine issue of material fact as to the first element.

The Court finds that Fontenot has demonstrated the required elements of a *prima facie* case of wage discrimination under the EPA: (1) that she was paid differently than her male predecessor, McCorquodale; (2) that she and McCorquodale performed equal work "on jobs the performance of which requires equal skill, effort, and responsibility"; and (3) that such work was performed under similar working conditions.[139] As such, the Court grants her "Motion for Partial Summary Judgment" to the extent that it requests summary judgment in Fontenot's favor that she has presented a *prima facie* case of wage discrimination under the EPA.

---

[137] *Siler-Khodr*, 261 F.3d at 546.

[138] Rec. Doc. 27, Exhs. 8,9,10. The Court notes Safety Council's assertion that Fontenot's total gross pay was actually $95,000 in 2015. *See* Rec. Doc. 33-1. However, assuming this assertion is true, the uncontroverted evidence in the record nevertheless indicates that McCorquodale was paid more than Fontenot.

[139] *See* 29 U.S.C. § 206(d).

## IV. Conclusion

The Court finds, and Safety Council does not dispute, that Fontenot has not waived her claim under the EPA. Accordingly, the Court grants Fontenot's motion to the extent it seeks summary judgment on that issue. The Court also finds, and Safety Council again does not dispute,[140] that the uncontroverted evidence in the record demonstrates that Fontenot was: (1) paid differently than McCorquodale; (2) for performing equal work that requires equal skill, effort, and responsibility; and (3) that such work was performed under similar working conditions. Thus, the Court will grant Fontenot's motion to the extent it requests summary judgment in her favor that she has presented a *prima facie* case of wage discrimination under the EPA. Accordingly,

**IT IS ORDERED** that Fontenot's "Motion for Partial Summary Judgment"[141] is **GRANTED**.

New Orleans, Louisiana, this _28th_ day of June, 2017.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[140] As discussed *supra* , Safety Council raises its affirmative defense that Fontenot's negotiation of her contract falls within the "catch-all exception" to the EPA as a factor other than sex, however, the Court's consideration of Safety Council's affirmative defense is outside of the scope of this motion.

[141] Rec. Doc. 27.