UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JONI FONTENOT | * | CIVIL ACTION NO. 2:16-CV-84 |
| | * | |
| v. | * | |
| | * | JUDGE BROWN |
| SAFETY COUNCIL OF SOUTHWEST | * | |
| LOUISIANA | * | |
| | * | MAGISTRATE JUDGE KAY |
| | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## ORDER

In this litigation, Plaintiff Joni Fontenot ("Fontenot") alleges that her employer, Safety Council of Southwest Louisiana ("Safety Council"), is paying her lower wages compared to those of a male employee who performed substantially the same work, in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d).[1] Fontenot also alleges that she was retaliated against by Safety Council after she complained about the discrimination, in violation of 29 U.S.C. § 215.[2] Before the Court is Safety Council's "Motion for Partial Summary Judgment" requesting summary judgment in favor of Safety Council that the correct limitations period for Fontenot's EPA claim is two years because there is no evidence that Safety Council willfully violated the EPA.[3] Having considered the pending motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny Safety Council's "Motion for Partial Summary Judgment" because the Court finds that there is a genuine dispute of material fact regarding whether Safety Council willfully violated the EPA in setting Fontenot's compensation.

---

[1] Rec. Doc. 1.

[2] *Id.*

[3] Rec. Doc. 28.

1

## I. Background

*A.  Factual Background*

Safety Council is a non-profit 501(c)(3) organization dedicated to cost effective services for Southwest Louisiana industrial and contractor businesses.[4] Fontenot is a female employed by Safety Council in the position of Chief Operating Officer ("COO").[5] Fontenot began in this position upon entering into a three-year contract on October 19, 2011.[6] The terms of the agreement ("Employment Contract"), including compensation and duties, are memorialized in the contract.[7] The Employment Contract was renewed for an additional three years on October 19, 2014, when neither party issued a statement of non-renewal under the terms of the Employment Contract.[8] Prior to Fontenot's employment as COO, Robert J. McCorquodale ("McCorquodale") served as Chief Executive Officer ("CEO") of Safety Council.[9] McCorquodale served in this position from 2005 to 2011.[10]

On November 10, 2015, Fontenot, through her attorney, made a demand on Safety Council asserting that Safety Council was in violation of the EPA, 29 U.S.C. § 206(d)(1).[11] On January 19, 2016, Fontenot, through her attorney, filed suit against Safety Council alleging a violation of the

---

[4] Joint Pretrial Statement (Rec. Doc. 24), para. 7.

[5] *Id.* at paras. 3, 7.

[6] *Id.* at para. 7.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

2

EPA and further alleging that Safety Council retaliated against her after the assertion of her EPA claim.[12]

Specifically, Fontenot alleges that Safety Council provided her with a lower compensation package, including a lower salary, smaller incremental increases in salary, and fewer benefits, than her male predecessor, McCorquodale, despite the fact that their job responsibilities were substantially equal.[13] Fontenot further alleges that Safety Council's discriminatory practices are "fixed, systematic, and continuing in nature," which she alleges is evidence of a willful violation of the law, and thus expands the statute of limitations for an EPA claim from two years to three years.[14] Finally, Fontenot alleges that Safety Council retaliated against her after she raised the issue of an EPA violation by "beginning to treat her differently and refusing to pay her a bonus for the year of 2015," despite the fact that she had received a bonus each year prior.[15] Fontenot seeks damages equivalent to the amount of wages and benefits withheld, an equal amount in liquidated damages, reasonable attorney's fees, costs associated with this litigation, and compensatory and punitive damages related to Safety Council's retaliatory activity.[16] On January 26, 2016, after filing her Complaint, Fontenot received a $6,000 bonus for the year 2015.[17]

On February 23, 2016, Safety Council filed an Answer to the Complaint, denying the allegations and alleging affirmative defenses.[18] Specifically, Safety Council alleges that Fontenot

---

[12] *Id.*

[13] Rec. Doc. 1 at para. 10.

[14] *Id.* at para. 11.

[15] *Id.* at para. 13.

[16] *Id.* at paras. 12, 15.

[17] Rec. Doc. 24 at para. 7.

[18] Rec. Doc. 4.

failed to state a claim upon which relief may be granted; that there is a two-year limitations period for an EPA claim; that any pay differential between Fontenot and her predecessor was the result of a voluntary agreement by Fontenot; that any pay differential between Fontenot and her predecessor was based on factors and circumstances other than gender; and that the claims alleged in the Complaint are barred, in whole or in part, by the EPA's affirmative defense precluding liability for unequal pay that results from compensation differentials based on factors other than sex.[19]

B.  **Procedural Background**

On January 19, 2016, Fontenot filed her Complaint against Safety Council in the Western District of Louisiana.[20] The case was assigned to Judge Minaldi in the Lake Charles Division.[21] Safety Council filed an Answer on February 23, 2016.[22] The case was set for trial on May 22, 2017.[23] On March 14, 2017, the trial date was continued to August 21, 2017.[24] The case was reassigned to Judge Brown of the Eastern District of Louisiana on March 15, 2017, with an order that the Local Rules of the Western District of Louisiana continue to apply to the case.[25]

On May 23, 2017, Safety Council filed a "Motion for Partial Summary Judgment," requesting the Court enter summary judgment in its favor that the two-year limitations period applies to Fontenot's claims because Safety Council alleges that there is no evidence that Safety

---

[19] *Id.* at 3–4.

[20] Rec. Doc. 1.

[21] Rec. Doc. 2.

[22] Rec. Doc. 4.

[23] Rec. Doc. 10.

[24] Rec. Doc. 18.

[25] Rec. Doc. 19.

Council willfully violated the EPA.[26] On June 2, 2017, Fontenot filed a response in opposition to the "Motion for Partial Summary Judgment," alleging the existence of evidence supporting her claim that Safety Council willfully violated the EPA.[27] With leave of Court, Safety Council filed a reply in support of its "Motion for Partial Summary Judgment" on June 7, 2017.[28] The same day, Safety Council filed a "Motion to Strike" certain evidence presented by Fontenot in her response in opposition to Safety Council's "Motion for Partial Summary Judgment."[29] Fontenot filed a response in opposition to the "Motion to Strike" on June 13, 2017.[30] With leave of Court, Safety Council filed a reply on June 19, 2017.[31] The Court denied Safety Council's "Motion to Strike" on June 23, 2017.[32]

## II. The Parties' Arguments

### A. *Safety Council's Arguments in Support of its "Motion for Partial Summary Judgment"*

In this motion, Safety Council moves for summary judgment on the issue of the appropriate limitations period for Fontenot's EPA claim.[33] Safety Council contends that pursuant to the limitations period set forth in 29 U.S.C. § 255(a), Fontenot's EPA claim should be limited to the time period of two years before the filing of her Complaint, or alternatively the two years before

---

[26] Rec. Doc. 28.

[27] Rec. Doc. 34.

[28] Rec. Doc. 36.

[29] Rec. Doc. 37.

[30] Rec. Doc. 40.

[31] Rec. Doc. 45.

[32] Rec. Doc. 48.

[33] Rec. Doc. 28.

5

she sent her demand letter alleging an EPA violation.[34] According to Safety Council, pursuant to 29 U.S.C. § 255(a), a claim under the EPA must be filed within two years after the cause of action accrues, or within three years if the alleged violation was willful.[35] Safety Council avers that there is no evidence that it violated the EPA willfully.[36] Safety Council contends there is no evidence that it "was aware of any issues under the … Equal Pay Act with respect to Fontenot's salary."[37] Safety Council contends that the deposition testimony of the past executive board president, Greg Satterfield ("Satterfield"), and current president, Steve Trahan ("Trahan"), reflects that Safety Council's executive board "had never received 'instruction' regarding pay differentials between males and females or 'how to avoid problems with equal pay for the sexes.'"[38] Safety Council argues that the standard for "willfulness" requires knowledge or reckless disregard as to whether it violated the statute.[39] This standard, Safety Council avers, requires more than a showing of unreasonableness and does not encompass the failure of an employer to seek legal advice regarding its payment practices.[40] According to Safety Council, an employer is not willful even if it knows that an EPA complainant was paid less than male colleagues and was dissatisfied with her pay.[41]

---

[34] Rec. Doc. 28-2 at 5.

[35] *Id.* at 3 (citing 19 U.S.C. § 255(a); *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009)).

[36] *Id.* at 4.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 3 (citing *Ikossi-Anastasiou*, 579 F.3d at 552).

[40] *Id.* at 3–4 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015)).

[41] *Id.* at 4 (citing *Ikossi-Anastasiou*, 579 F.3d at 553).

Safety Council contends that under the two-year limitations period, Fontenot's EPA claim should be limited to paychecks received within two years before the filing of this lawsuit on January 19, 2016.[42] In the alternative, Safety Council contends that the claim should be limited to paychecks received in the two years prior to Fontenot's demand letter on November 10, 2015.[43]

B.  *Fontenot's Arguments in Opposition to the "Motion for Partial Summary Judgment"*

In response, Fontenot first asserts that she has not had a "full opportunity to conduct discovery" and requests more time to complete discovery before the Court renders judgment on Safety Council's motion.[44] Alternatively, Fontenot argues that Safety Council "knew that paying Fontenot substantially less than it paid McCorquodale for the same work was illegal."[45] Fontenot contends that Safety Council did not present evidence that showed that it did not have knowledge that paying Fontenot differently violated the EPA.[46]

In support of her request for more time to complete discovery, Fontenot claims that she requested the depositions of certain Safety Council board members, but she has not had the opportunity to depose all of them due to busy schedules and scheduling conflicts.[47] Fontenot asserts that summary judgment may be appropriate "as long as the plaintiff has had a full opportunity to conduct discovery,'" but contends that is not the case in this instance.[48]

---

[42] Rec. Doc. 28-2 at 5.

[43] *Id.*

[44] Rec. Doc. 34 at 9.

[45] *Id.* at 2.

[46] *Id.* (emphasis in original).

[47] *Id.* at 5.

[48] *Id.* (quoting *Patterson v. Blue Offshore BV*, No. 13-337, 2015 WL 914919, at *5 (E.D. La. Mar. 3, 2015)).

7

In the alternative, Fontenot argues that the evidence she submits shows that there is a genuine dispute as to whether Safety Council willfully violated the EPA.[49] Fontenot submits an image of a poster hung in the kitchen area of Safety Council's main office.[50] According to Fontenot, the poster includes a summary of the law under the EPA.[51] Specifically, it states: "In addition to sex discrimination prohibited by Title VII of the Civil Rights Act, as amended, the Equal Pay Act of 1963, as amended, prohibits sex discrimination in the payment of wages to women and men performing substantially equal work, in jobs that require equal skill, effort and responsibility, under similar working conditions, in the same establishment."[52] Fontenot contends that a member of the board who participated in the hiring and pay setting process for Fontenot, Larry DeRoussel, maintained an office in Safety Council's main office where the poster was hung in the kitchen area and "regularly entered the kitchen" where the poster was "conspicuously displayed."[53] Fontenot further contends that, in 2011 and before, board meetings were regularly held at the main office building where the directors were free to use the kitchen.[54]

Fontenot also claims that Safety Council knew the law as a result of an unequal pay complaint made by a female employee, Sherelyn Kight ("Kight"), in 2004.[55] According to Fontenot, there was an investigation into Kight's claim, which required participation by Fontenot

---

[49] *Id.* at 5–8.

[50] *Id.* at 2 (citing Exhibit 7).

[51] *Id.*

[52] *Id.*

[53] *Id.* at 3.

[54] *Id.*

[55] *Id.* at 3, 8.

8

and by members of the board, five of whom were on the board when Fontenot was hired, and two of whom participated in setting Fontenot's salary.[56]

Fontenot contends that Satterfield, a member of the board of directors for Safety Council when Fontenot was hired, told Fontenot "a few years back" that Safety Council had adjusted McCorquodale's compensation due to concerns about pay disparity between him and his female predecessor, Madelyn Wills ("Wills").[57] Fontenot contends that her recollection of this conversation is supported by a 2004 memorandum by McCorquodale to Safety Council president, Ron Phelps, regarding McCorquodale's compensation, which states:

> When the original contract was agreed to, everyone agreed that the pay was low for the job[,] but we also recognized that if we paid what it was worth we could face a problem with Madelyn [Wills] so the benefits were used to offset the low income. That is behind us and I am comfortable with the pay level albeit I am limited to what I can save . . . .[58]

Fontenot argues that McCorquodale's statement in the memorandum concerning the structuring of his compensation demonstrates that McCorquodale and Safety Council understood the requirements and concerns of the law when setting McCorquodale's compensation.[59]

Fontenot also notes that there were at least two members of the board who hired Fontenot with significant legal experience—a judge and an attorney.[60] Fontenot contends that Safety Council has not presented any evidence that these board members or any of the members

---

[56] *Id.* at 3.

[57] *Id.*

[58] *Id.* at 4 (citing Exh. 8).

[59] *Id.* at 8.

[60] *Id.* at 4.

9

previously discussed did not know "that hiring Fontenot to do the same work as McCorquodale for substantially less pay was a violation of the law."[61]

Fontenot says that Safety Council "takes the position" that it paid Fontenot less than McCorquodale in order to correct its "previous malfeasance" of paying McCorquodale too much.[62] Fontenot argues that Safety Council's position is an affirmative defense, which is an issue of fact that affects the determination of the proper prescriptive period.[63] This affirmative defense, Fontenot contends, requires a "credibility determination" that is inappropriate for summary judgment.[64]

### C. *Defendant's Reply in Further Support of the Motion for Partial Summary Judgment*

In reply, Safety Council argues that Fontenot relies on the flawed premise that "any pay differential between a man and a woman necessarily violates the law."[65] Safety Council contends that pay differentials between men and women can be legal under the EPA as long as the differential is not based on gender.[66] Safety Council asserts that there were non-gender related issues which Safety Council considered in setting Fontenot's pay, including Fontenot's level of experience and the correction of the unauthorized excesses of her predecessor's pay.[67] Safety Council avers that the correct legal standard, as set forth in *Ikossi-Anastasiou v. Board of Supervisors of Louisiana State University*, is not whether the defendant knew of a pay disparity

---

[61] *Id.*

[62] *Id.* at 7, n. 3.

[63] *Id.* at 7.

[64] *Id.*

[65] Rec. Doc. 36 at 1.

[66] *Id.* at 1–2.

[67] *Id.* at 3.

but whether the defendant knew there was a statutory violation of the law, that is, a pay disparity based on sex.[68]

Safety Council states its position that the reason it changed the structure of the contract for the chief officer position was to make it "less susceptible to exploitation" after it discovered McCorquodale's unauthorized payments.[69] Safety Council concludes[70] that summary judgment should be granted because there is no competent, relevant evidence demonstrating that Safety Council had knowledge of an EPA violation.[71]

### III. Law & Analysis

*A.     Legal Standard*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[72] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[73] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

---

[68] *Id.* (citing 579 F.3d at 552).

[69] *Id.* at 7–8.

[70] Safety Council's reply also includes objections to the rough draft of Joe A. Andrepont's deposition transcript and to the last paragraph of Fontenot's affidavit, both included as exhibits to Fontenot's memorandum in opposition to Safety Council's "Motion for Partial Summary Judgment." *Id.* at 5–6. These issues were addressed in Safety Council's motion to strike, which the Court denied on June 23, 2017. Rec. Doc. 48.

[71] *Id.* at 8.

[72] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[73] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[74] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[75] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[76]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[77] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[78] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[79] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[80] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable

---

[74] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[75] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[76] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[77] *Celotex*, 477 U.S. at 323.

[78] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[79] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[80] *Little*, 37 F.3d at 1075.

trier of fact to find for the nonmoving party.[81] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[82]

### B.   *Analysis*

Safety Council argues that there is no evidence that it willfully violated the EPA when it set Fontenot's compensation.[83] Thus, Safety Council requests that this Court find that the two-year limitations period applies to Fontenot's EPA claim.[84] Fontenot argues that the Court should deny Safety Council's "Motion for Partial Summary Judgment" on the issue of the applicable limitations period because discovery has not concluded, or, alternatively, because she has met her burden to show that there is a genuine dispute of fact as to whether Safety Council willfully violated the EPA.[85]

The Fair Labor Standards Act ("FLSA") provides a limitations period of two years after the cause of action accrued, which is extended to three years if the alleged violation was willful.[86] The EPA was incorporated into the FLSA at 29 U.S.C. §206(d),[87] and thus, the limitations period also applies to the EPA.[88] "An employer willfully violates the FLSA if it 'either knew or showed

---

[81] *Smith v. Amedisys Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[82] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[83] Rec. Doc. 28-2 at 4.

[84] *Id.* at 5.

[85] Rec. Doc. 34 at 9.

[86] 29 U.S.C. § 255(a).

[87] 77 Stat. 57 (1963).

[88] *See Ikossi-Anastasiou*, 579 F.3d at 552.

13

reckless disregard for the matter of whether its conduct was prohibited by the statute.'"[89] Willfulness does not encompass mere knowledge of the existence of the EPA and the fact that it could be applied to the employer's conduct, nor does it encompass the negligent conduct of an employer, such as not seeking legal advice concerning its pay practices.[90] In an EPA claim, the plaintiff has the burden to demonstrate willfulness.[91] "Because willfulness is a question of fact, summary judgment in favor of the employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of willfulness."[92]

In *Ikossi-Anastasiou*, the Fifth Circuit upheld a district court's determination that the employer had not willfully violated the EPA, holding that the plaintiff's "allegations of willfulness [could] not survive the summary judgment stage where she relied upon salary records and copies of grievances she submitted to her employer."[93] The Fifth Circuit reasoned the fact that the employer knew that the plaintiff was paid less than male colleagues and was dissatisfied with this difference in pay was "not enough to raise a fact question as to whether [the employer] knew or recklessly disregarded that its pay scale was prohibited."[94] However, in *Mohammadi v. Nwabuisi*, the Fifth Circuit found that there was a genuine dispute as to whether the employer had willfully violated the FLSA when there was evidence of a previous FLSA action brought against the employer and the employer testified in her deposition that the previous action was frivolous and

---

[89] *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

[90] *McLaughlin*, 486 U.S. at 130, 134–35.

[91] *See Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990); *McLaughlin*, 486 U.S. at 135.

[92] *Ikossi-Anastasiou*, 579 F.3d at 552.

[93] 579 F.3d at 553.

[94] *Id.*

that she believed she was in compliance with the FLSA.[95] Moreover, in *Reich v. Bay, Inc.*, the Fifth Circuit affirmed the district court's ruling that continuing a pay practice without investigating an alleged FLSA violation could constitute a willful violation where the employer did not investigate its payment practices after it had been told by the local division of the Department of Labor that the practices violated FLSA.[96]

In the instant case, Fontenot claims that Safety Council twice before had either investigated or been cognizant of issues of unequal pay between males and females at Safety Council, and therefore, knew the law required Safety Council to pay males and females equally.[97] In support, Fontenot submits McCorquodale's 2004 memorandum to Safety Council president, Ron Phelps.[98] The memorandum states: "When the original contract was agreed to, everyone agreed that the pay was low for the job but we also recognized that if we paid what it was worth we could face a problem with Madelyn [Wills] so the benefits were used to offset the low income."[99] Fontenot argues that this is evidence that Safety Council knew the requirements under the law and attempted to avoid "a problem" involving unequal pay when it paid McCorquodale more than his female predecessor, Wills, by providing higher compensation to McCorquodale in the form of benefits, which would not be reflected in his base salary.[100]

Fontenot further supports her assertion that Safety Council knew the requirements of the EPA because in 2004 she was involved in an investigation along with "many of the board

---

[95] *Id.* at 333.

[96] 23 F.3d 110, 117 (5th Cir. 1994).

[97] Rec. Doc. 34 at 8.

[98] *Id.* at 3–4.

[99] *Id.* at 4 (citing Exh. 8).

[100] *Id.* at 8.

members" into the claim of a female employee, Sherelyn Kight, who claimed that she was being paid less than a male colleague.[101] Fontenot contends that five of the board members involved in this investigation were on the board of directors when she was hired as Chief Operating Officer, and that two of the members were also on the sub-committee that interviewed and hired Fontenot as Chief Operating Officer and set her salary.[102]

Safety Council argues that there is no evidence Safety Council was aware of any EPA concerns regarding Fontenot's salary.[103] It further states that Greg Satterfield, past executive board president, and Steve Trahan, current executive board president, both testified in their depositions that they "had never received 'instruction' regarding pay differentials between males and females or 'how to avoid problems with equal pay for the sexes.'"[104] The Court notes that, Satterfield also testified in his deposition that he had been on the board of directors since the 1990s and that he did not recall whether the board of directors received any education concerning pay disparity between males and females.[105] Safety Council argues that "failing to seek legal advice concerning a pay practice does not evidence a willful violation."[106]

---

[101] *Id.* at 3, 8; Rec. Doc. 34-10.

[102] Rec. Doc. 34 at 8; Rec. Doc. 34-10.

[103] Rec. Doc. 28-2 at 4.

[104] *Id.*

[105] Rec. Doc. 28-3 at 18–19.

[106] Rec. Doc. 28-2 at 4 (citing *Mireles*, 899 F.2d at 1416).

16

As evident in the Fifth Circuit's holdings in *Ikossi-Anastasiou*,[107] *Reich*,[108] and *Mohammadi*,[109] evidence of an employer's action or inaction after notice of a complaint of unequal pay is relevant to whether an employer willfully violated the EPA by reckless disregarding whether its pay practices were in violation of the EPA. Fontenot has pointed to evidence that Safety Council twice considered or investigated the implications of unequal pay between sexes: once when Fontenot and board members investigated Kight's complaint of unequal pay, and once when setting McCorquodale's initial salary so that Safety Council would not "face a problem" with Wills, McCorquodale's female predecessor.[110] Safety Council contends that failing to seek legal advice does not constitute a willful violation and presents evidence that two board members had never received instruction regarding pay differentials between males and females and how to avoid problems.[111] In light of the evidence submitted by Fontenot, and in viewing the evidence in the light most favorable to Fontenot as the nonmovant, the Court finds that evidence has been submitted which creates a genuine dispute of material fact as to whether Safety Council acted willfully by exhibiting reckless disregard for whether it paid Fontenot in violation of the EPA. Accordingly, the Court denies Safety Council's "Motion for Partial Summary Judgment."[112]

---

[107] 579 F.3d at 553.

[108] 23 F.3d at 117.

[109] 605 F. App'x at 333.

[110] Rec. Doc. 34 at 8.

[111] Rec. Doc. 28-2 at 4.

[112] In Fontenot's opposition to this motion, she requests that the Court defer consideration on the issue until more discovery has been completed. Rec. Doc. 34 at 9. Because the Court finds in Fontenot's favor that she has presented sufficient evidence that a genuine dispute of material fact exists to deny this motion, the Court need not defer consideration.

## IV. Conclusion

The Court finds that there is a genuine dispute as to the material fact of whether Safety Council willfully violated the EPA in setting Fontenot's compensation. Accordingly,

**IT IS ORDERED** that Safety Council's "Motion for Partial Summary Judgment"[113] is **DENIED**.

New Orleans, Louisiana, this  28th  day of June, 2017.

*Nannette Jolivette Brown*
NANNETTE JOLIVETTE BROWN
UNITED STATES DISTRICT JUDGE

---

[113] Rec. Doc. 28.