# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JONI FONTENOT** | * | **CIVIL ACTION NO. 2:16-CV-84** |
| | * | |
| | * | |
| **VERSUS** | * | **CHIEF JUDGE BROWN** |
| | * | |
| | * | |
| **SAFETY COUNCIL OF SOUTHWEST** | * | **MAGISTRATE JUDGE KAY** |
| **LOUISIANA** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## ORDER AND REASONS

Before the Court is Defendant Safety Council of Southwest Louisiana's ("Safety Council")

"Renewed Rule 50(b) Motion for Judgment as a Matter of Law or Alternatively Rule 59(e) Motion

for Remittitur" ("Renewed Motion for Judgment as a Matter of Law" and "Alternative Motion for

Remittitur").[1] Also before the Court is Plaintiff Joni Fontenot's ("Fontenot") "Motion for

Liquidated Damages."[2] Having considered the pending motions, the memoranda in support and in

opposition, the record, and the applicable law, the Court will deny Safety Council's "Renewed

Motion for Judgment as a Matter of Law" and its "Alternative Motion for Remittitur" and grant

Fontenot's "Motion for Liquidated Damages."

## I. Background

### A.    *Factual Background*

Fontenot began in the position of Chief Operating Officer ("COO") of Safety Council in

2011.[3] Her employment contract was for a period of three years with an automatic renewal unless

---

[1] Rec. Doc. 182.

[2] Rec. Doc. 185.

[3] Pretrial Order (Rec. Doc. 161) at 2.

either party terminated the contract pursuant to the provisions therein.[4] In 2014, the contract renewed by its own terms, as neither party initiated its termination.[5] Fontenot's base salary from 2011 through 2015 was $95,000[6] with the opportunity to "receive an annual performance bonus directly tied to strategic efforts, membership and financial results as approved by the executive board."[7] On September 3, 2015, Fontenot notified President of the Executive Board, Steve Trahan ("Trahan"), of her dissatisfaction with her salary.[8] Trahan asked Fontenot to make a proposal.[9] On November 10, 2015, Fontenot's lawyer sent Safety Council: (1) a proposal for a new contract proposing, *inter alia*, a salary of $149,000[10] and (2) a demand letter raising allegations that Safety Council was in violation of the Equal Pay Act ("EPA").[11] Fontenot received a negative performance appraisal from Safety Council at the end of 2015.[12]

On January 19, 2016, Fontenot filed suit against Safety Council in the United States District Court for the Western District of Louisiana, alleging that she was being paid less than her male

---

[4] *Id.* at 2–3; Employment Contract of Joni Fontenot, dated Oct. 19, 2011 (Rec. Doc. 172-1) at 22 (Plaintiff's Tr. Exh. 6, admitted Oct. 24, 2017) (hereinafter "Fontenot Employment Contract").

[5] *Id.* at 3.

[6] *See* "Raises and Promotions History" (Rec. Doc. 173-1) at 22 (Defendant's Tr. Exh. 10, admitted on Oct. 24, 2017); Testimony of Joni Fontenot (Rec. Doc. 177) at 27 (hereinafter "Fontenot Testimony").

[7] Fontenot Employment Contract (Rec. Doc. 172-1) at 22.

[8] Fontenot Testimony (Rec. Doc. 177) at 34; Testimony of Steve Trahan (Rec. Doc. 180) at 29 (hereinafter "Trahan Testimony").

[9] Fontenot Testimony (Rec. Doc. 177) at 34; Trahan Testimony (Rec. Doc. 180) at 29.

[10] Letter from Plaintiff's Counsel to Safety Council and Joni Fontenot's Contract Proposal, dated Nov. 10, 2015 (Rec. Doc. 173-1) at 29–32 (Defendant's Tr. Exh. 12, admitted Oct. 24, 2017) (hereinafter "Fontenot's Nov. 2015 Contract Proposal").

[11] Demand Letter from Plaintiff's Counsel to Safety Council, dated Nov. 10, 2015 (Rec. Doc. 173-1) at 70 (Defendant's Tr. Exh. 34, admitted Oct. 25, 2017) (hereinafter "Demand Letter").

[12] *See* "Employee Appraisal of Joni Fontenot" dated Dec. 14, 2015 (Rec. Doc. 172-1) at 42–46 (Plaintiff's Tr. Exh. 14, admitted Oct. 24, 2017) (hereinafter "2015 Employee Appraisal")); Fontenot Testimony (Rec. Doc. 177) at 7.

predecessor for performing equal work under similar working conditions in violation of the EPA.[13] Fontenot also claimed that Safety Council retaliated against her for making a complaint by failing to pay her a performance bonus and by treating her differently, causing her to suffer damages including extreme distress, anxiety, and fear.[14] The next day, Fontenot received an email from Trahan stating that she would receive a bonus of $6,000 for the year 2015 and a pay increase of six percent.[15] On July 12, 2017, Safety Council gave notice to Fontenot that it would allow the contract "to expire pursuant to its own terms on October 18, 2017," stating it had concerns about some of the terms and offering to meet with Fontenot "to consider whether a new mutually satisfactory contract [could] be reached."[16] Fontenot testified that she received a proposal for a new contract from Safety Council a week and a half before trial began in this matter on October 23, 2017.[17] She also testified that she did not agree to the contract and had subsequently sent Safety Council her own proposal.[18]

## B.    *Procedural Background*

On January 19, 2016, Fontenot filed suit against Safety Council alleging violations of the EPA, 29 U.S.C. § 206(d)(1), and the anti-retaliation provision of the Fair Labor Standards Act

---

[13] Compl. (Rec. Doc. 1) at 2.

[14] *Id.* at 3.

[15] Email from Steve Trahan to Joni Fontenot dated Jan. 20, 2016 (Rec. Doc. 173-1) at 33 (Defendant's Tr. Exh. 13, admitted Oct. 24, 2017) (hereinafter "Email re: 2015 bonus and 2016 raise").

[16] Letter from Steve Trahan to Joni Fontenot dated July 12, 2017 (Rec. Doc. 172-3) at 58 (Plaintiff's Tr. Exh. 29, admitted Oct. 24, 2017) (hereinafter "Notice of Non-Renewal").

[17] *See* Fontenot Testimony (Rec. Doc. 178) at 42–43.

[18] *Id.* at 43–44.

("FLSA"),[19] 29 U.S.C. § 215(a)(3).[20] Fontenot sought damages for wages and benefits withheld and liquidated damages, relating to her EPA claim, and compensatory and punitive damages for emotional injury and withholding her bonus, relating to her retaliation claim.[21] A jury trial was held from October 23 through October 26, 2017. The jury found that Safety Council had not violated the EPA by paying Fontenot differently than her male predecessor.[22] However, the jury found that Safety Council had violated the FLSA by retaliating against Fontenot because she engaged in EPA-protected activity.[23] The jury awarded Fontenot $120,000 in damages for Safety Council's retaliation.[24]

On November 9, 2017, Safety Council filed a Renewed Motion for Judgment as a Matter of Law and Alternative Motion for Remittitur.[25] On November 14, 2017, Fontenot filed a Motion for Liquidated Damages seeking an additional amount equal to the jury's award of $120,000, pursuant to 29 U.S.C. § 216(b), plus legal interest from the date of judgment, attorney's fees, and costs.[26] The motions are opposed.[27]

---

[19] In 1963, the Equal Pay Act was enacted and incorporated into § 206, "Minimum Wage," of the FLSA. 77 Stat. 57 (1963).

[20] Compl. (Rec. Doc. 1).

[21] *Id.* at 3.

[22] Jury Verdict (Rec. Doc. 171).

[23] *Id.*

[24] *Id.*

[25] Rec. Doc. 182.

[26] Rec. Doc. 185.

[27] Rec. Doc. 189; Rec. Doc. 191.

## II. Parties' Arguments

### A. *Safety Council's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for Remittitur*

#### 1. Safety Council's Arguments in Support of the Motion

In support of its Renewed Motion for Judgment as a Matter of Law, Safety Council argues that Fontenot has not presented evidence upon which a reasonable juror could conclude: (1) that an adverse employment action took place or (2) that Safety Council took any such action because Fontenot engaged in EPA-protected activity.[28] In the alternative, Safety Council moves the Court to vacate the jury's award because the evidence of damages presented by Fontenot does not justify the jury's award of $120,000 for retaliation.[29]

First, Safety Council argues that, as a matter of law, the evidence does not support a finding that an adverse employment action took place.[30] Safety Council asserts that Fontenot cited a reduction in a discretionary bonus as the primary example of retaliation by Safety Council and that district courts within the Fifth Circuit have held that this action does not rise to the level of an adverse employment action.[31] According to Safety Council, Fontenot's contract contained a provision for a discretionary bonus, providing that she "may receive an annual performance bonus" subject to "approv[al] by the executive board."[32] Safety Council also contends that Fontenot received a raise in salary of six percent (approximately $5,700) in the same year that she claims

---

[28] Rec. Doc. 182.

[29] *Id.*

[30] Rec. Doc. 182-1 at 6.

[31] *Id.* at 10–11 (citing *Turner v. DynMcDermott Petroleum Operations Co.*, No. 06-1455, 2010 WL 4363403, at *3 (E.D. La. Oct. 21, 2010); *Garrison v. Tex. S. Univ.*, No. H-11-2368, 2012 WL 5351216, at *5 (S.D. Tex. Oct. 23, 2012); *Daniel v. Universal Ensco, Inc.*, No. 09-4140, 2011 WL 13140729, at *10 (S.D. Tex. Aug. 31, 2011)).

[32] *Id.* at 11–12 (citing Fontenot Employment Contract (Rec. Doc. 172-1) at 23).

her bonus was reduced by $4,000.[33] Therefore, Safety Council argues, a reduction in a discretionary bonus, particularly when Fontenot received an even larger raise, cannot, as a matter of law, be the basis of a jury's finding of retaliation.[34]

Safety Council further argues that Fontenot's remaining examples of retaliation do not relate to an ultimate employment decision and do not meet the materiality requirement to make an action an adverse employment action.[35] Safety Council cites a Fifth Circuit case for the proposition that "the materiality requirement reflects the importance of separating 'significant from trivial harms.'"[36] According to Safety Council, at trial, Fontenot alleged that Safety Council's retaliatory actions were:

> "(1) a negative performance review for 2015 with which [Fontenot] disagreed; (2) an email with the word 'horses' spelled incorrectly which [Fontenot] astonishingly claims is the word 'whore;' (3) an alleged bank change in the signature requirements on checks (which there is no evidence that it was even known by, much less directed by the Safety Council board or its president); (4) a delay in the payment of [Fontenot's] bonus caused by undisputed and innocuous scheduling issues[;] and (5) being asked to be excused from a board meeting (due to the Board's need to discuss the lawsuit she had filed against Safety Council outside of her presence)."[37]

Safety Council argues that these are trivial matters that do not constitute materially adverse employment actions and do not relate to ultimate employment decisions.[38] Therefore, Safety Council argues, it is entitled to judgment as a matter of law as to Fontenot's retaliation claims.[39]

---

[33] *Id.* at 12 (citing Email re: 2015 bonus and 2016 raise (Rec. Doc. 173-1) at 33).

[34] *Id.*

[35] *Id.* at 12, 14 (citing Jury Instructions (Rec. Doc. 169)).

[36] *Id.* at 12–13 (quoting *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 178 (5th Cir. 2008)).

[37] *Id.* at 13–14 (internal footnote omitted).

[38] *Id.* at 14.

[39] *Id.*

Second, Safety Council asserts that even if Fontenot presented evidence of an adverse employment action, her EPA-protected activity was not the "but-for" cause.[40] Safety Council contends that a causal connection cannot be inferred where an employer proceeds with an adverse employment action that had been previously planned or contemplated.[41] According to Safety Council, Fontenot's testimony as to the conversation she had with Trahan on September 3, 2015, is not sufficient to prove she engaged in EPA-protected activity on that date because Fontenot could not remember the exact words she used.[42] Therefore, Safety Council argues, Fontenot did not meet her burden to prove that she made the complaint "sufficiently clear and detailed" such that Safety Council understood she was asserting her rights under the EPA.[43] Thus, Safety Council contends, the earliest date Fontenot could prove that she engaged in EPA-protected activity is November 10, 2015, the date of her demand letter to Safety Council referencing a violation of the EPA.[44]

Safety Council argues that by November 10, 2015, Fontenot "was well on the path to a reduced discretionary bonus," which disproves a causal link between Fontenot's EPA-protected activity and her reduced bonus.[45] Specifically, Safety Council claims that the trial evidence shows that Safety Council was dissatisfied with Fontenot's dealings with a local bank and the Safety Council board of directors in August and September 2015, and that the board became aware of

---

[40] *Id.* at 15.

[41] *Id.* (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Swanson v. Gen. Servs Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).

[42] *Id.* at 16 (citing Fontenot Testimony (Rec. Doc. 177) at 56–57).

[43] *Id.*

[44] *Id.*

[45] *Id.*

these dealings after September 3, 2015, but before November 10, 2015.[46] Safety Council contends

that the evidence shows that these dealings were the reason for Fontenot's negative 2015 employee

appraisal.[47] Safety Council asserts that it did not have to suspend its decision to reduce Fontenot's

bonus as it was based on her conduct prior to her November 2015 complaint and, therefore, such

timing is not evidence of causality.[48]

In the alternative, Safety Council requests remittitur to reduce or vacate the jury's award

of $120,000 because Safety Council alleges that Fontenot did not present evidence of actual

injury.[49] Safety Council contends that the only possible argument Fontenot presented relating to

damages and her retaliation claim is a reduction in a discretionary bonus, which, at most, could

amount to $4,000 (the difference between her 2015 bonus of $6,000 and her largest bonus of

$10,000).[50] Safety Council argues that at trial Fontenot did not describe any other injury or present

any other evidence of damages sustained as a result of Safety Council's retaliation.[51] Therefore,

Safety Council requests that the Court reduce or vacate the jury's award.[52]

## 2. Fontenot's Arguments in Opposition to the Motion

In opposition, Fontenot argues that: (1) the facts at trial showed that adverse action was

taken against Fontenot; (2) the causal link is obvious; and (3) the damages are warranted.[53]

---

[46] *Id.* at 16–19.

[47] *Id.* at 19 (citing 2015 Employee Appraisal (Rec. Doc. 172-1) at 42–46).

[48] *Id.* at 20.

[49] *Id.* at 21.

[50] *Id.* at 20–21.

[51] *Id.* at 21.

[52] *Id.*

[53] Rec. Doc. 189 at 4, 9, 10.

Fontenot claims that Safety Council took adverse employment actions by treating her differently, by sending her harsh emails instead of talking to her, and by deciding that they would not renew her contract.[54] Fontenot points to Safety Council's growth while she was COO and her positive performance reviews with Safety Council in the fourteen years prior to making her complaint as evidence of Fontenot's positive performance.[55] Fontenot claims that Safety Council adopted the issue with the local bank as an excuse to "run her off," pointing to evidence that she claims shows that Safety Council authorized Fontenot to contract with a different local bank at a September 3, 2015, board meeting.[56] Fontenot argues that after observing the demeanor of Fontenot and Safety Council's board members during their testimony regarding Fontenot's employment before and after she made her complaint, the jury accepted Fontenot's story over Safety Council's and found that Safety Council had retaliated against Fontenot.[57]

Fontenot also argues that the withholding of her bonus from November to January, tying her bonus to her job review for the first time, and conducting a formal job review for the first time, constitute adverse employment actions.[58] According to Fontenot, the jury believed these actions resulted from Fontenot's complaint.[59]

Another adverse employment action, according to Fontenot, is that she received negative performance reviews that questioned her adequacy to remain in the position, even though she had

---

[54] *Id.* at 5.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 4–5, 6.

[58] *Id.* at 6.

[59] *Id.*

received good reviews for the fourteen years prior to making a complaint.[60] Fontenot also contends that, pursuant to her contract, her bonus was tied to "strategic efforts, membership and financial results."[61] According to Fontenot, instead of receiving a bonus that reflected Safety Council's growth pursuant to her contract, Safety Council reduced her bonus to offset a six percent raise after Trahan had asked Fontenot to make a proposal, thus making her net increase nominal.[62] Further, Fontenot asserts that Safety Council did not pay her bonus until she brought suit.[63] Fontenot asserts that the jury had the right to determine whether these actions showed retaliation.[64]

Finally, Fontenot claims that Safety Council's decision not to renew her contract because it "ha[d] concerns about various aspects of the existing contract" constitutes an adverse employment action because Fontenot had the same contract for six years without any questions or modifications from Safety Council when it was renewed in 2014.[65] Fontenot claims all of these factors, individually or collectively, would dissuade a person from making an EPA complaint, which makes these actions materially adverse as required by the Supreme Court and the Fifth Circuit.[66]

Fontenot claims that the jury had the right to consider the evidence and conclude that there was a causal link between her complaint and the adverse employment actions taken by Safety

---

[60] *Id.* at 6 (citing 2015 Employee Appraisal (Rec. Doc. 172-1) at 42–46).

[61] *Id.* at 4 (citing Fontenot Employment Contract (Rec. Doc. 172-1) at 23).

[62] *Id.* at 7.

[63] *Id.*

[64] *Id.*

[65] *Id.* (citing Notice of Non-Renewal (Rec. Doc. 172-3) at 58).

[66] *Id.* at 7–9 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006); *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 178 (5th Cir. 2008)).

Council.[67] In particular, Fontenot claims that the evidence showed that she had received no negative reviews in the fourteen years prior to her complaint in September 2015.[68] Fontenot argues that the evidence showed that in January 2016 Safety Council made clear that Fontenot would not retain her job by saying as much in her first negative performance review.[69] Fontenot claims that this is enough on its own, as well as in the context of the other evidence, to sustain the jury's finding of a causal link.[70]

Lastly, Fontenot contends that the damages awarded by the jury are warranted.[71] Fontenot claims that she was distressed, humiliated, shocked, fearful, and "beaten" as a result of Safety Council's actions and endured this emotional injury for the two years before trial.[72] Fontenot cites a Fifth Circuit case for the proposition that a jury verdict should not be disturbed as excessive unless the amount clearly exceeds that which "any reasonable man could feel the claimant is entitled to."[73] Fontenot cites *Dulin v. Board of Commissioners of Greenwood Leflore Hospital* as an example of the Fifth Circuit upholding a jury award when the damages were based on the plaintiff's uncorroborated statements before the jury regarding his emotional distress,[74] and cites several Fifth Circuit opinions holding that an award of $100,000 for claims of emotional distress

---

[67] *Id.* at 9–10.

[68] *Id.* at 10.

[69] *Id.* (citing 2015 Employee Appraisal (Rec. Doc. 172-1) at 42-46).

[70] *Id.*

[71] *Id.*

[72] *Id.* at 10–11.

[73] *Id.* at 11–12 (citing *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)).

[74] *Id.* at 12–13 (citing 586 F. App'x 643, 650-51 (5th Cir. 2014)).

was reasonable.[75] Fontenot argues that the facts of her case provide a stronger basis than those cases to uphold the jury's award of $120,000, and, thus, that Safety Council's motion for remittitur should be denied.[76] Alternatively, Fontenot suggests the Court should offer a new trial or reduction to the award.[77]

## B. *Fontenot's Motion for Liquidated Damages*

### 1. **Fontenot's Arguments in Support of the Motion**

In support of her Motion for Liquidated Damages, Fontenot asserts that she is statutorily entitled to liquidated damages in an additional equal amount to the jury's $120,000 damages award for her retaliation claim.[78] Fontenot asserts that the language of 29 U.S.C. § 216(b) imposes a mandatory award of liquidated damages when a plaintiff prevails on a retaliation claim, highlighting the portion of the statute which states that an employer "shall be liable for such legal or equitable relief as may be appropriate . . . and an additional equal amount as liquidated damages."[79] Citing the Fifth Circuit's holding that liquidated damages are mandatory for a violation of the FLSA under 29 U.S.C. § 206 or § 207 for unpaid compensation,[80] Fontenot contends that because "identical" statutory language is used, liquidated damages are also mandatory for violations of the anti-retaliation provision under 29 U.S.C. § 215(a)(3).[81]

---

[75] *Id.* at 14 (citing *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 775 (5th Cir. 1996); *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 262 (5th Cir. 1999); *Williams v. Trader Pub. Co.*, 218 F.3d 481 (5th Cir. 2000); *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 487 (5th Cir. 2001); *Salinas v. O'Neill*, 286 F.3d 827, 832 (5th Cir. 2002)).

[76] *Id.* at 14–15.

[77] *Id.* at 15 n.19.

[78] Rec. Doc. 185-1 at 1–2.

[79] *Id.* at 2 (citing 29 U.S.C. § 216(b)).

[80] *Id.* (citing *Owens v. Marstek, L.L.C.*, 548 F. App'x 966, 972 (5th Cir. 2013)).

[81] *Id.*

Accordingly, Fontenot asserts that the Court is required to award liquidated damages, unless Safety Council can show that its acts giving rise to the suit were both in good faith and reasonable, as required by 29 U.S.C. § 260.[82]

Fontenot argues that "retaliation," by its definition, precludes a finding of good faith and reasonableness.[83] Therefore, Fontenot argues, because the jury found that Fontenot's EPA complaint was the "but-for" cause of Safety Council's retaliation, it is not possible for the Court to find that Safety Council had a good faith and reasonable belief that it was not violating the anti-retaliation provision of the FLSA.[84] Thus, Fontenot asserts, an award of liquidated damages equal to the jury's award is mandatory.[85] Accordingly, Fontenot seeks a total damages award of $240,000, plus legal interest from the date of judgment, attorney's fees, and all costs associated with the proceedings.[86]

### 2.    Safety Council's Arguments in Opposition to the Motion

In opposition, Safety Council argues that it acted in good faith[87] and, alternatively, that any award of liquidated damages must be limited to the amount of "wages lost," pursuant to the language of the statute.[88] Safety Council claims that it introduced substantial evidence that it had

---

[82] *Id.* at 2–3 (citing *Lowe v. Southmark Corp.*, 998 F.2d 335, 338 (5th Cir. 1993)).

[83] *Id.* at 3–4 (citing *Retaliation*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005) ("Retaliation is, by definition, an intentional act."); *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 287 (5th Cir. 1986) ("[A] finding of retaliation strongly implies there was no good faith.")).

[84] *Id.* at 4.

[85] *Id.*

[86] *Id.*

[87] Safety Council also argues that liquidated damages are inappropriate because Fontenot did not prove that she suffered an adverse employment action such that the jury could have found that Safety Council retaliated against Fontenot for making a complaint. Rec. Doc. 191 at 1–3. These arguments are the same as the ones raised by Safety Council in its Renewed Motion for Judgment as a Matter of Law *See* Rec. Doc. 182. The Court will address these arguments when considering that motion.

[88] Rec. Doc. 191 at 3, 6.

good-faith, non-retaliatory reasons for reducing Fontenot's 2015 bonus, including her dealings with a local bank and the Safety Council board.[89] Safety Council also points to the fact that after Fontenot made her EPA complaint, Safety Council gave Fontenot a raise which exceeded the amount of the bonus reduction, which Safety Council contends is evidence of its good faith.[90] According to Safety Council, because its decision to reduce Fontenot's bonus was made in good faith, based on Fontenot's job performance, no basis exists for an award of liquidated damages.[91]

Alternatively, Safety Council argues that the statute providing for liquidated damages for violations of the anti-retaliation provision limits liquidated damages to an equal amount of wages lost.[92] Safety Council asserts that the language of 29 U.S.C. § 216(b) unambiguously provides that in cases of retaliation, an employer may be liable for "the payment of wages lost and an additional equal amount as liquidated damages."[93] Safety Council cites two district court cases decided by magistrate judges in the Fifth Circuit, which it asserts limit liquidated damages to the amount of wages lost.[94] Safety Council characterizes liquidated damages as punitive damages and asserts that

---

[89] *Id.* at 3–5.

[90] *Id.* at 4.

[91] *Id.* at 6.

[92] *Id.* at 7. Safety Council also argues that the jury's award of $120,000 should be vacated because Fontenot did not provide evidence of damages at trial. *Id.* at 6. This argument is raised in Safety Council's Alternative Motion for Remittitur. *See* Rec. Doc. 182. The Court will address these arguments when considering that motion. Safety Council also references, but does not incorporate, its opposition to Fontenot's Motion for Attorney's Fees and Costs where it spends nearly ten pages arguing that the evidence was insufficient to support the jury's finding and award and that liquidated damages are not warranted. Rec. Doc. 191 at 6, n. 7. The Court has reviewed those arguments and finds them to be substantially the same to the arguments raised in support and in opposition to the motions considered in this Order.

[93] *Id.* at 7 (citing 29 U.S.C. § 216(b); *Brown v. Pizza Hut of Am. Inc.*, Nos. 96-6260, 96-6244, 1997 WL 271313, at *1 (10th Cir. May 22, 1997)).

[94] *Id.* at 7–8 (citing *Lee v. U.S. Sec. Assocs., Inc.*, No. A-07-CA-395, 2008 WL 958219, at *8 (W.D. Tex. Apr. 8, 2008); *Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 479–80 (E.D. Tex. 2013)).

a statute which authorizes punitive damages must be strictly construed.[95] Thus, Safety Council argues, the maximum amount that could be awarded as liquidated damages is $4,000, which represents the "theoretical difference" between Fontenot's 2015 bonus and the largest bonus she had received.[96]

### III. Law and Analysis

Because the dispositions of certain of the pending motions impact the others, the Court considers the motions in the following order: (1) Safety Council's Renewed Motion for Judgment as a Matter of Law; (2) Safety Council's Alternative Motion for Remittitur; and (3) Fontenot's Motion for Liquidated Damages.

**A.  *Motion for Judgment as a Matter of Law Under Rule 50***

**1.  Legal Standard**

Federal Rule of Civil Procedure 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on the issue, the court may:
>
> > (A) resolve the issue against the party; and
> >
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a)(1), within twenty-eight days after the entry of judgment a party may file a renewed motion for

---

[95] *Id.* at 8 (citing *Guilbeaux v. City of Eunice*, No. 6:16-cv-01464, 2017 WL 2508212, at *3 (W.D. La. May 19, 2017) (quoting *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002)).

[96] *Id.* at 8.

judgment as a matter of law and include an alternative request for a new trial under Rule 59.[97] "In ruling on the motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."[98]

A motion pursuant to Rule 50(b) "in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[99] Therefore, under Rule 50(b), "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."[100] In evaluating a Rule 50(b) motion, a court must "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."[101] Because all reasonable inferences and credibility determinations should be resolved in favor of the non-movant, "judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[102]

### 2. Analysis

#### a. Adverse Employment Action

Safety Council argues that Fontenot failed to prove she suffered an adverse employment action because a reduction in a discretionary bonus cannot be an adverse employment action and

---

[97] Fed. R. Civ. P. 50(b).

[98] *Id.*

[99] *Flowers v. S. Reg'l Physician. Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) (internal quotations omitted)).

[100] *Id.* (quoting *Ford*, 230 F.3d at 830) (internal quotations omitted)).

[101] *Id.* (quoting *Brown v. Bryan Cty, Okla.*, 219 F.3d 450, 456 (5th Cir. 2000) (internal quotations omitted)).

[102] *Id.* (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)) (internal quotations omitted).

because Fontenot's other claims do not meet the materiality requirement to rise to the level of an adverse employment action.[103] Fontenot contends that she proved that after she made her complaint on September 3, 2015, she suffered the adverse employment actions of being treated differently, receiving a negative performance review, having her bonus withheld and reduced, and having her contract expire.[104]

An adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[105] This standard is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."[106] However, "'petty slights, minor annoyances, and simple lack of good manners' . . . are not actionable retaliatory conduct."[107]

Safety Council contends that Fontenot's contract provided a provision for a discretionary bonus and that other district courts have held that a discretionary bonus cannot constitute an adverse employment action, particularly when accompanied by a larger raise in pay.[108] The bonus provision of the contract is located under the "Compensation" section and states: "Executive may receive an annual performance bonus directly tied to strategic efforts, membership and financial

---

[103] Rec. Doc. 182-1 at 10–14.

[104] Rec. Doc. 189 at 4–9.

[105] *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 178 (5th Cir. 2008) (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)) (internal quotation marks omitted).

[106] *Id.* (citing *Burlington*, 548 U.S. at 69) (internal quotation marks omitted).

[107] *Stewart v. Miss. Transp. Com'n.*, 586 F.3d 321, 332 (5th Cir. 2009) (quoting *Burlington*, 548 U.S. at 68).

[108] Rec. Doc. 182-1 at 10–12 (citing *Turner*, 2010 WL 4363403, at *3; *Garrison*, 2012 WL 5351216, at *5; *Daniel*, 2011 WL 13140729, at *10).

results as approved by the executive board."[109] Although Safety Council argues the relevance of the fact that Fontenot received a raise that was larger than her reduced bonus, the bonus provision of the contract specifically lists the factors to consider when determining a bonus, and an increase in salary is not one of those factors.[110] Furthermore, Trahan testified that Safety Council had positive results in the three categories to which Fontenot's performance bonus was "directly tied."[111] When asked how Safety Council decided on a bonus of $6,000, Trahan testified that the "Iberia Bank situation" "was a piece of it," and that the executive board wanted to put measures in place so that there was not an expectation to receive a $10,000 bonus every year, but that the bonus was performance-based.[112] Trahan also testified that the bonus was not at the whim of Safety Council but based off "a sheet" with "a committee" to evaluate.[113]

Because of the placement and language of the provision in the contract, the evidence presented as to the positive results in the three categories specifically mentioned therein, and the testimony that the bonus was not at the whim of Safety Council, the Court finds, in this case, that the jury could find that a reduction in bonus was an adverse employment action. This, alone, supports the jury's finding that there was an adverse employment action. However, considering the amount of damages awarded, the Court also considers the sufficiency of the evidence to support findings of other adverse employment actions, namely the termination of Fontenot's contract.

---

[109] Fontenot Employment Contract (Rec. Doc. 172-1) at 23.

[110] *See* Fontenot Employment Contract (Rec. Doc. 172-1) at 23.

[111] *See* Testimony of Steve Trahan (Rec. Doc. 179) at 17–18 (hereinafter "Trahan Testimony").

[112] *Id.*

[113] *Id.* at 18–19.

Safety Council sent Fontenot a letter in July 2017 providing notice that it would allow her contract to expire[114] at the end of its term on October 18, 2017, citing concerns about "various aspects" of the contract.[115] Fontenot testified that prior to making a complaint she had received no notification that Safety Council had concerns about her contract and that the contract had automatically renewed in 2014.[116]

Pursuant to the terms of the contract, one of the parties had to initiate the termination of the contract to prevent it from automatically renewing for another three years.[117] Safety Council's written notice thus prevented Fontenot's contract from automatically renewing, which affected her employment status at its expiration.[118] Termination of a contract "well might [dissuade] a reasonable employee from making or supporting a charge of discrimination."[119] Furthermore, the language of the statute specifically makes it unlawful for an employer to discharge an employee

---

[114] The language of the Notice of Non-Renewal provides that Safety Council will allow the contract to "expire." However, because the terms of the contract provide an automatic renewal and Safety Council was required to take affirmative action to prevent automatic renewal, it is appropriately considered a termination of the contract.

[115] Notice of Non-Renewal (Rec. Doc. 172-3) at 58.

[116] Fontenot Testimony (Rec. Doc. 178) at 50.

[117] Fontenot Employment Contract (Rec. Doc. 172-1) at 22.

[118] In its opposition to Fontenot's Motion for Attorney's Fees and Costs, Safety Council claims that Fontenot was not "fired" because Safety Council offered Fontenot a new contract, which Fontenot rejected. Rec. Doc. 190 at 11. However, Safety Council does not cite any authority to support its contention that offering a new contract with different terms makes its termination of Fontenot's prior contract lawful. Although Safety Council identifies changes to the proposed contract that may appear to be more favorable to Fontenot, such as a six percent increase in salary and removing the possibility of termination without cause, other provisions were amended or removed as well that might not be so favorable, such as reducing the term of the contract to one year without an automatic renewal and removing a minimum of six months full compensation if the contract was terminated without cause. *See* Rec. Doc. 173-1 at 72–77; Rec. Doc. 172-1 at 22–27. Furthermore, the Court recognizes that this lawsuit had not yet proceeded to trial on the merits of Fontenot's EPA claim in which she contended she was owed a much higher salary than the one offered in the proposed contract and that part of Safety Council's defense to that claim was that Fontenot had negotiated for her salary. Accordingly, the Court is not persuaded by Safety Council's argument in opposition to a separate motion that the termination of Fontenot's contract cannot be considered an adverse employment action where a new contract was offered with different terms and was rejected.

[119] *Browning*, 288 F. App'x at 178 (citing *Burlington*, 548 U.S. at 69) (internal quotation marks omitted).

because the employee made a complaint under the FLSA.[120] Therefore, the Court finds that Safety Council's termination of Fontenot's contract is an adverse employment action.[121]

Accordingly, the Court finds that both the reduction of Fontenot's bonus and the termination of her contract are adverse employment actions sufficient to support the jury's finding of retaliation. Therefore, it is unnecessary to address the sufficiency of whether Fontenot's claim of "being treated differently" or Safety Council's dispute as to individual acts could be considered adverse employment actions.

### b.    But-for Causation

Safety Council argues that Fontenot did not prove that she made a sufficiently clear and detailed complaint on September 3, 2015, to constitute EPA-protected activity, and, therefore, the first complaint that could be considered for her retaliation claim was her letter to Safety Council on November 10, 2015.[122] According to Safety Council, there can be no causal connection between Fontenot's protected activity and the adverse employment actions because Safety Council's dissatisfaction with Fontenot's performance, which Safety Council contends is the but-for cause of any adverse employment action, began before November 10, 2015.[123] Fontenot claims that she engaged in EPA-protected activity by making a complaint on September 3, 2015.[124]

---

[120] 29 U.S.C. § 215(a)(3).

[121] *See Medlock v. Ace Cash Exp., Inc.*, 589 F. App'x 707, 709 (5th Cir. 2014) (stating that termination was an adverse employment action).

[122] Rec. Doc. 182-1 at 15–16.

[123] *Id.*

[124] Rec. Doc. 189 at 7.

"[A]n informal, internal complaint [may] constitute protected activity under Section 215(a)(3)," the anti-retaliation provision of the FLSA.[125] However, "not all abstract grumblings or vague expressions of discontent are actionable as complaints."[126] An informal complaint must concern some violation of law.[127] The Fifth Circuit has held that:

> [T]he "employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation" and the "complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [EPA] and a call for their protection."[128]

Fontenot testified that she made her complaint on September 3, 2015, when she spoke with Trahan raising the issue that she was not paid the same as her predecessor for doing the same work. Specifically, Fontenot testified:

> Q: [D]id you ever report to Mr. Trahan concerns you had about your salary?
>
> A: I did. . . . I brought the concerns up again September 3rd, the evening, that afternoon and everything, let him know because I had a problem, wanted to know why I did not receive the same equal pay that [my predecessor,] Bob McCorquodale[,] did when I'm doing the same job, same work, actually more work than what was required of him.[129]
>
> . . .

---

[125] *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008).

[126] *Hagan*, 529 F.3d at 626 (quoting *Hagan v. Echostar Satellite, L.L.C.*, No. H-05-1365, 2007 WL 543441, at *4 (S.D. Tex. Feb. 16, 2007)).

[127] *Id.*

[128] *Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017) (quoting *Lasater v. Tex. A & M Univ.-Commerce*, 495 F. App'x 458, 461 (5th Cir. 2012)).

[129] Fontenot Testimony (Rec. Doc. 177) at 33–34.

Q: [Y]ou gave a description today in court about what you told [Trahan] in your testimony. Do you recall during your deposition you did not recall the exact words that you –

A: I couldn't remember the exact words, but I know I brought up the issue that I did not receive the same pay as Bob. I don't remember the exact wording of what exactly I said in the conversation with [Trahan].

Q: Okay.

A: I know I voiced my concern.[130]

Trahan testified that Fontenot did not raise the issue of discrimination or a pay discrepancy during their conversation on September 3, 2015, but that if she had, he would have acted differently. Specifically, Trahan testified:

Q: Did [Fontenot] say anything to you during that call about discrimination, pay discrepancy, comparison with Bob McCorquodale's salary, anything of the kind?

A: Nothing like that.

Q: If she had said that to you, what, if anything, would you have done?

A: I would have requested a sit-down and meet with her to make sure I understand – understood all the facts that she was basing this on and then I would have brought that to the executive board meeting to see what we could do to help her.

Q: Why would you do that?

A: Well, my past life as a human resources manager, that's what I was trained to do.[131]

---

[130] *Id.* at 57.

[131] Trahan Testimony (Rec. Doc. 180) at 29–30.

"[D]rawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party,"[132] the Court considers it reasonable that the jury believed Fontenot over Trahan on whether she raised the issue of a pay discrepancy between herself and her male predecessor for equal work during the conversation on September 3, 2015, and that her statements were sufficient for a reasonable employer to understand it as an assertion of rights protected by the EPA.[133] Because there is evidence in the record that Fontenot engaged in EPA-protected activity on September 3, 2015, Safety Council's argument that there can be no causal connection on that basis is unavailing.

Accordingly, the Court will deny Safety Council's Renewed Motion for Judgment as a Matter of Law.

## B.    *Alternative Motion for Remittitur*

### 1.    **Legal Standard**

A motion to alter or amend a judgment must be filed no later than twenty-eight days after the entry of the judgment.[134] Damage awards that are excessive or "so large as to appear contrary to right reason" are subject to remittitur.[135] "A verdict is excessive as a matter of law if shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.'"[136] If remittitur is appropriate, the Court must reduce the verdict to the "maximum amount the jury could properly have awarded."[137]

---

[132] *Flowers*, 247 F.3d at 235 (quoting *Brown*, 219 F.3d at 456) (internal quotations omitted).

[133] *See Starnes*, 849 F.3d at 632.

[134] Fed. R. Civ. P. 59(e).

[135] *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992).

[136] *Id.* (quoting *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir. 1982)).

[137] *Id.* (quoting *Hansen v. Johns-Manville Prods. Corp.*, 734 F.2d 1036 (5th Cir. 1984)).

Damage awards based on intangible harm are reviewed with deference because they are subjective and may depend considerably on the demeanor of witnesses.[138] However, emotional distress damages must still be supported by competent evidence.[139] A plaintiff seeking damages for emotional distress must prove "a specific discernable injury to the claimant's emotional state."[140] "Damages for emotional distress may be appropriate . . . where 'the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation.'"[141] Hurt feelings, anger, and frustration do not support a mental anguish award.[142]

### 2. Analysis

Safety Council argues that Fontenot presented no evidence of damages except as to the difference between the largest bonus she received and the bonus she received for the year 2015, a difference of $4,000.[143] Fontenot claims that she suffered "shock, devastation and humiliation" due to Safety Council threatening her job and treating her differently, as well as enduring "intimidation, fear, concern and brokenness for two years."[144]

Finding that Safety Council retaliated against Fontenot, the jury awarded her $120,000 in damages.[145] The Court has already determined, *supra*, that a reduction in Fontenot's bonus and

---

[138] *Giles*, 245 F.3d at 487–88 (citing *Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 937–38 (5th Cir. 1996)).

[139] *Id.* at 488 (citing *Brady v. Fort Bend County,* 145 F.3d 691, 718 (5th Cir. 1998)).

[140] *Id.* (citing *Brady*, 145 F.3d at 718).

[141] *Id.* (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1988)).

[142] *Id.* (citing *Brady*, 145 F.3d at 718).

[143] Rec. Doc. 182-1 at 20.

[144] Rec. Doc. 189 at 11.

[145] Jury Verdict Form (Rec. Doc. 171).

terminating her contract are adverse employment actions. Furthermore, the testimony supports, and the parties seem to agree, that $4,000 is the difference between Fontenot's largest bonus of $10,000 and her 2015 bonus of $6,000.[146] Moreover, Trahan testified as to the positive results in the three categories to which the bonus was directly tied.[147] Accordingly, relating to the reduction in bonus, the Court finds evidence to support damages of $4,000.

Fontenot further testified, and evidence was submitted, that Safety Council took affirmative steps pursuant to the contract to stop Fontenot's contract from automatically renewing, as provided by its terms.[148] The October 19, 2011, contract provides in pertinent part:

> **Term of Employment**. Subject to the termination provisions in Section 4 of this Agreement, the term of this Agreement shall begin on October 19, 2011 and shall continue through October 18, 2014. This Agreement shall be renewed thereafter for additional three year terms without the necessity of action by either party unless written notice to the contrary is provided no later than 90 days prior to the expiration of the initial term or any subsequent renewal term. The terms and conditions of any renewal term shall be the same as those set forth herein absent a written agreement to the contrary, but shall include any increases in compensation granted in the previous term.[149]

Thus, based on the evidence, had Safety Council not terminated the contract, it would have renewed for another three years, subject to the termination clauses in the contract. Under the contract, Fontenot would have earned $100,700 as a base salary with an annual bonus opportunity, which had been up to $10,000 annually, and benefits including a $600 per month car allowance,

---

[146] *See* Fontenot Testimony (Rec. Doc. 177) at 55 (confirming previous bonuses of $10,000, $10,000, and $9,350); *see also* Safety Council's memorandum in support of the instant motion (Rec. Doc. 182-1) at 20–21.

[147] *See* Trahan Testimony (Rec. Doc. 179) at 17–18.

[148] Fontenot Testimony (Rec. Doc. 177) at 31; Notice of Non-Renewal (Rec. Doc. 172-3) at 58.

[149] Fontenot's Employment Contract (Rec. Doc. 172-1) at 22.

Safety Council benefit plans, and a term life insurance policy.[150] Furthermore, the contract included a clause that if Safety Council terminated the contract without cause prior to the natural termination date of her contract, it would have owed Fontenot "full compensation" over the course of the number of months equal to the number of years she had been employed with Safety Council.[151] Therefore, had the contract been automatically renewed, Safety Council likely would have owed Fontenot full compensation for seventeen months if it had terminated her contract without cause.[152]

Because Safety Council provided notice that it would not renew the contract, the contract would have expired on October 18, 2017.[153] At the time of trial, October 23, 2017, the parties had not signed a new contract.[154] Considering the evidence submitted detailing Fontenot's salary and benefits, reduction in bonus, and termination of her contract,[155] the Court finds that $120,000 does not exceed "any rational appraisal or estimate of the damages that could be based upon the

---

[150] *See id.* at 22–23; Trahan Testimony (Rec. Doc. 179) at 16–17 ("Q: So 6 percent on her $95,000 salary? A: Yes, sir."); Email re: 2015 bonus and 2016 raise (Rec. Doc. 173-1) at 33 ("The e-board has agreed to offer you[, Fontenot,] a 6% wage increase[.]")

[151] Fontenot Employment Contract (Rec. Doc. 172-1) at 22–23.

[152] *See* Fontenot Testimony (Rec. Doc. 177) at 32 (stating she had been employed by Safety Council for more than seventeen years). Payment for seventeen months would be true if Safety Council terminated the contract at any point in the first year of the contract term. *See id.*

[153] Notice of Non-Renewal (Rec. Doc. 172-3) at 58.

[154] *See* Fontenot Testimony (Rec. Doc. 178) at 42–52 (discussing Safety Council's contract proposal, received by Fontenot about a week and a half before trial, and Fontenot's counteroffer).

[155] Finding ample evidence to support the jury's verdict based on evidence relating to Fontenot's compensation, the Court declines to decide the sufficiency of the evidence to support any award for emotional harm. The Court notes that Fontenot did not cite any portion of the record in support of her argument that she had proven emotional damages, despite the fact that the transcription of her testimony was already in the record. On review of Fontenot's testimony, the Court found scant, if any, evidence of emotional harm, and doubts the sufficiency of Fontenot's testimony to meet the Fifth Circuit's threshold of something more than "hurt feelings, anger, and frustration." *See Giles*, 245 F.3d at 488. Fontenot did not testify to a specific discernable injury to her emotional state, such as "sleeplessness, anxiety, stress, marital problems, and humiliation." *See id.*

evidence before the jury."[156] Accordingly, the Court will deny Safety Council's Motion for Remittitur.

## C.     *Motion for Liquidated Damages*

### 1.     **Legal Standard**

The anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), makes it unlawful to discharge or otherwise discriminate against an employee because the employee filed a complaint under the FLSA.[157] Pursuant to the second sentence[158] of the "Damages" section under the "Penalties" provision of the FLSA, 29 U.S.C. § 216(b):

> [a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.[159]

The Fifth Circuit has stated that the "granting of liquidated damages is mandatory under section 216(b).[160] However, pursuant to 29 U.S.C. § 260, the Court may reduce or eliminate the amount of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]."[161] "[A]n

---

[156] *Brunnemann*, 975 F.2d at 178.

[157] In 1963, the EPA was enacted and incorporated into § 206 "Minimum Wage" of the FLSA. 77 Stat. 56–57 (1963).

[158] The first sentence governs the liability of employers for violations of the minimum wage and overtime compensation provisions of the FLSA. 29 U.S.C. § 216(b).

[159] *Id.* (emphasis added).

[160] *See Lowe*, 998 F.2d at 337.

[161] 29 U.S.C. § 260; *Lowe*, 998 F.2d at 337

employer 'faces a substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.'"[162] The Court has discretion to award liquidated damages even if it determines that the employer's actions were in good faith and based on reasonable grounds for believing that it was not violating the FLSA.[163]

### 2. Analysis

#### a. *Liquidated Damages*

Fontenot claims that she is statutorily entitled to an equal amount of the jury's award, $120,000, as liquidated damages, and that Safety Council cannot show that it acted in good faith and with reasonable grounds for believing it was not in violation of the anti-retaliation provision of the FLSA.[164] In opposition, Safety Council contends that it provided substantial evidence at trial that it reduced Fontenot's 2015 bonus in good faith, and further, that if liquidated damages are warranted, they must be limited to the amount of lost wages, in this case a maximum of $4,000.[165] The parties dispute the amount of the jury's award of retaliation damages for which liquidated damages are available pursuant to 29 U.S.C. § 216(b).

The Fifth Circuit has stated that the award of liquidated damages is mandatory under § 216(b).[166] Moreover, having affirmed the jury's award of $120,000 based on the reduction to Fontenot's 2015 bonus and Safety Council's termination of Fontenot's contract, it is likely that the parties' disagreement as to whether liquidated damages are limited to lost wages is moot.

---

[162] *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003) (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)).

[163] *Bernard*, 154 F.3d at 267 (citing *Lee v. Coahoma Cty, Miss.*, 937 F.2d 220, 226 (5th Cir. 1991)).

[164] Rec. Doc. 185-1 at 2–4.

[165] Rec. Doc. 191 at 1.

[166] *Lowe*, 998 F.2d at 337.

Accordingly, the Court will grant Fontenot's Motion for Liquidated Damages and award $120,000 in liquidated damages unless Safety Council satisfies the Court that liquidated damages should be denied or reduced pursuant to 29 U.S.C. § 260.[167]

The "court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title" "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]."[168] An employer has the burden of demonstrating both good faith and reasonable grounds for believing that it was not violating the FLSA.[169] This is a "substantial burden."[170] "[G]ood faith requires a 'duty to investigate potential liability under the FLSA.'"[171]

The jury found that Safety Council took adverse employment actions against Fontenot because Fontenot made a complaint under the EPA.[172] To make this finding, however, the jury was not required to find that Safety Council knew that such action was in violation of the FLSA, § 215(a)(3).[173] Yet, in order to meet its "substantial burden" to allow the Court to consider whether to reduce or eliminate the amount of liquidated damages, Safety Council must put forth at least

---

[167] *See Lowe*, 998 F.2d at 337–38.

[168] 29 U.S.C. § 260.

[169] *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1263 (5th Cir. 1986).

[170] *Steele v. Leasing Enterps. Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (citing *Mireles*, 899 F.2d at 1415).

[171] *Id.* (quoting *Barcellona v. Tiffany English Pub., Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)).

[172] Jury Verdict Form (Rec. Doc. 171) at 2.

[173] *See id.*

some showing that it attempted to determine whether reducing Fontenot's bonus and terminating her contract were in violation of the FLSA.[174]

Safety Council makes the same arguments in support of its good-faith argument as it did at trial against Fontenot's retaliation claim: that Safety Council reduced Fontenot's bonus because of her dealings with Safety Council's board and a local bank.[175] However, Safety Council has made no showing that it made any effort to investigate whether its actions were in violation of the FLSA's anti-retaliation provision.[176] Therefore, the Court finds that Safety Council has not met its burden to show that its reduction of Fontenot's bonus and termination of her contract were in good faith and that it had reasonable grounds for believing that doing so would not violate the FLSA.[177] Accordingly, the Court has no discretion to reduce the award of liquidated damages for lost wages.

Furthermore, even if Safety Council had shown that it investigated whether its actions were in violation of the FLSA, the Court would decline to reduce the amount of liquidated damages considering the jury's finding that Safety Council took adverse employment action against Fontenot because she engaged in EPA-protected activity. Finding sufficient evidence to support the jury's verdict, the Court also finds that Safety Council has not shown that its actions were in good faith. Therefore, a reduction in liquidated damages would not be within the Court's discretion.

---

[174] *See Steele*, 826 F.3d at 246 (citing *Barcellona*, 597 F.2d at 469).

[175] Rec. Doc. 191 at 3–6.

[176] *See* Rec. Doc. 191.

[177] 29 U.S.C. § 260.

### b.  *Post-Judgment Interest, Attorney's Fees, and Costs*

In the Motion for Liquidated Damages, Fontenot also requests interest from the date of judgment, as well as attorney's fees and costs."[178] In its opposition to the motion, Safety Council did not respond to Fontenot's request that she be awarded interest, attorney's fees, and costs.[179]

Pursuant to 28 U.S.C. § 1961(a), interest from the date of judgment to the date of payment is allowed for "any money judgment in a civil case recovered in a district court." The Fifth Circuit has determined that post-judgment interest is permitted for damages awarded under the FLSA.[180] Furthermore, pursuant to 29 U.S.C. § 216(b), "a reasonable attorney's fee" and costs of the action are available to a prevailing plaintiff. As Fontenot prevailed on her retaliation claim and was awarded monetary damages, she is entitled to attorney's fees, costs, and post-judgment interest.

Accordingly, the Court will grant Fontenot's Motion for Liquidated Damages and will award liquidated damages in the amount of $120,000, attorney's fees, costs, and post-judgment interest.

### D.  *Alternative Support for an Award of $240,000*

For the reasons discussed *supra*, the Court finds that the jury's award was proper and finds it mandatory to award an equal amount in liquidated damages. Alternatively, even if the jury's damages award pertaining to the termination of Fontenot's contract was not based on substantial

---

[178] Rec. Doc. 183.

[179] Rec. Doc. 191. However, in its opposition to Fontenot's Motion for Attorney's Fees and Costs, Safety Council contests that Fontenot was the prevailing party and that she is entitled to attorney's fees and costs. *See* Rec. Doc. 190 at 6–16. However, Safety Council's arguments disputing that Fontenot was a prevailing plaintiff is based on its contention that the jury's verdict is unsupported by the facts and the law, rather than a contention that Fontenot is not entitled to attorney's fees and costs if the jury's verdict stands. *Id.*

[180] *Reeves v. Int'l Tel. & Tel. Corp.*, 705 F.2d 750, 751–52 (5th Cir. 1983).

evidence, for the reasons that follow, the Court nevertheless finds that a total award of $240,000 would be warranted, considering the availability of front pay.

An award of front pay, an equitable remedy, is for the Court to decide, not the jury.[181] Although the Court's research has not revealed a Fifth Circuit case addressing an award of front pay under the FLSA, the Fifth Circuit has addressed front pay awards in the context of the Age Discrimination in Employment Act ("ADEA"),[182] which adopts much of the same language of the FLSA's enforcement and damages provisions.[183]

The preferred equitable relief for discharge in the ADEA context is reinstatement, but front pay is an appropriate substitute when reinstatement is not feasible.[184] "[F]ront pay is meant 'to compensate the plaintiff for wages and benefits [she] would have received from the defendant employer in the future if not for the discrimination.'"[185] The Fifth Circuit has held that front pay is an equitable remedy, which is for the Court to determine, and is, therefore, not a jury question.[186] Reinstatement is an available remedy for violations of the FLSA's anti-retaliation provision.[187] Therefore, the Court finds guidance from the ADEA context appropriate.

---

[181] *See Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991) (citing *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 823 (5th Cir. 1990)).

[182] *See e.g.*, *id.*

[183] *See* 29 U.S.C. § 626(b) ("The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in section[] . . . 216[.] . . . In any action brought to enforce this chapter the court shall have jurisdiction to grant such *legal or equitable relief as may be appropriate to effectuate the purposes* of this chapter, *including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.*") (emphasis added).

[184] *See Reneau*, 945 F.2d at 870 (citing *Deloach*, 897 F.2d at 823; *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir.), *cert. denied*, 493 U.S. 842 (1989)).

[185] *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490 (5th Cir. 2007) (quoting *Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379, 402 (5th Cir. 2002)).

[186] *Reneau*, 945 F.2d at 870 (citing *Deloach*, 897 F.2d at 822; *Hansard*, 865 F.2d at 1469).

[187] 29 U.S.C. § 216(b).

The Court first considers whether reinstatement was feasible, considering factors enumerated by the Fifth Circuit such as: (1) "whether positions now exist comparable to the plaintiff's former position;" (2) "whether reinstatement would require an employer to displace an existing employee;" (3) "whether the plaintiff has changed careers;" and (4) "whether animosity exists between the plaintiff and [her] former employer."[188]

The Court considers whether animosity exists between the parties. Here, Fontenot has not asked for reinstatement as a remedy.[189] Moreover, this lawsuit has spanned over two years with unsuccessful attempts at settlement and a split verdict by the jury, which each party vigorously contests in the four post-trial motions before the Court and may continue to contest on appeal.[190] Further, the testimony of the parties and the evidence introduced suggests that trust between Fontenot and Safety Council board members has been irreparably compromised. For example, Fontenot's counter-proposal for a new contract included clauses requiring third-party mediation of certain disputes and restrictions on persons who could be President of Safety Council while she was COO.[191] Safety Council's 2015 performance appraisal of Fontenot also included negative ratings in areas indicating poor relations between the parties.[192] Further, as discussed in the parties' briefings and as shown at trial, the events and communications relating to the loan negotiations

---

[188] *Palasota*, 499 F.3d at 489.

[189] However, pursuant to Rule 54 of the Federal Rules of Civil Procedure, "every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." *See also, Reneau*, 945 F.2d at 870 (failing to expressly request front pay does not preclude the award).

[190] *See e.g.*, Rec. Docs. 182, 183, 185, and 186.

[191] *See e.g.*, 2017 Employment Contract Proposal by Fontenot (Rec. Doc. 173-1) at 78–81 (Defendant's Tr. Exh. 36, admitted Oct. 25, 2017) (hereinafter "Fontenot's 2017 Employment Contract Proposal").

[192] 2015 Employee Appraisal (Rec. Doc. 172-1) at 43 (citing insubordination and questioning whether Fontenot could remain in her job in performance areas relating to the relationship between Fontenot and the Safety Council board).

with Iberia Bank suggest that Fontenot's reinstatement may have adverse effects on the business ventures and relations of Safety Council moving forward.[193] Accordingly, the Court finds that reinstatement would not be feasible and considers whether an award of front pay would be appropriate.

The Court is given "wide latitude" in determining an amount to award as front pay because front pay is "calculated through intelligent guesswork."[194] The Fifth Circuit has identified several factors to consider in determining the amount of a front pay award:

> (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship.[195]

The Court must also consider whether an award of front pay should be reduced in consideration of such factors as: (1) whether the plaintiff has any interim earnings; (2) whether the plaintiff failed to mitigate her damages; and (3) any discount of the award to present value.[196]

The Court considers the initial factors and concludes that a front pay award of three years is appropriate, considering that Fontenot had been employed with Safety Council for over seventeen years;[197] the terminated contract was for a three-year term with an automatic renewal

---

[193] *See e.g.*, Trahan Testimony (Rec. Doc. 180) at 11, 14–15 (describing his concerns about the ethics of Fontenot's decisions concerning Iberia Bank); Email from Barry Brown to Steve Trahan, dated October 28, 2015 (Rec. Doc. 173-1) at 90–91 (Defendant's Tr. Exh. 39, admitted Oct. 25, 2017) (describing Iberia Bank's relationship and communications with Fontenot and stating it was the first time in his career that he had "been treated in this manner"); Safety Council's Renewed Motion for Judgment as a Matter of Law (Rec. Doc. 182-1) at 16–19 (describing Fontenot's dealings with Iberia Bank as tainting the reputation of Safety Council and as unethical).

[194] *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (citing *Sellers v. Delgado Coll.*, 781 F.2d 503, 505 (5th Cir. 1986)).

[195] *Id.* (citing *Reneau*, 945 F.2d at 871).

[196] *See Webster v. Bass Enters. Prod. Co.*, 114 F. App'x 604, 605 (5th Cir. 2004) (citing *Deloach*, 897 F.2d at 822–23; *Giles*, 245 F.3d at 489, n. 27); *Giles*, 245 F.3d at 489 (citing *Hansard*, 865 F.2d at 1470).

[197] Fontenot Testimony (Rec. Doc. 177) at 32.

clause;[198] there was evidence that Safety Council was performing well and that Safety Council thought Fontenot was doing a good job prior to her complaint;[199] and Safety Council is a regional non-profit organization which may limit or eliminate Fontenot's ability to find a substantially equivalent job within her geographical area.[200] As discussed *supra*, the evidence supports a finding that Fontenot's annual compensation was $116,000, based on the terms of her contract and her history of bonuses.[201] Accordingly, an award of front pay for three years amounts to an award of $348,000.

Considering the factors relevant to whether an award of front pay should be reduced, the Court considers that Fontenot had not agreed to the one-year contract Safety Council proposed to replace her three-year contract.[202] Thus, the Court considers this a failure to mitigate and would reduce the award of front pay to two years, or $232,000. However, the Court determines that no

---

[198] Fontenot Employment Contract (Rec. Doc. 172-1) at 22–23.

[199] *See e.g.*, Tr. (Testimony of Joe Andrepont, Oct. 24, 2017); Trahan Testimony (Rec. Doc. 179) at 17–18; Fontenot Testimony (Rec. Doc. 177) at 16–17.

[200] Pretrial Order (Rec. Doc. 161) at 2; *See e.g.*, Tr. (Oct. 23, 2017, Testimony of Larry DeRoussel) (discussing Safety Council's training offerings in relation to other safety council's in other areas across the Gulf Coast); 2012 Safety Council By-Laws (Rec. Doc. 172-1) at 8 (Plaintiff's Tr. Exh. 1, admitted on Oct. 23, 2017) (describing its purpose to "provide services to all of Southwest Louisiana").

[201] The contract provides $100,700 annual base salary, $7,200 per year as a car allowance, historically $10,000 bonus based on certain growth and performance factors, plus benefit plans, life insurance, home internet access, and continuing education courses. Fontenot Employment Contract (Rec. Doc. 172-1) at 22–23.

[202] *See* Fontenot Testimony (Rec. Doc. 178) at 42–52 (discussing Safety Council's contract proposal, received by Fontenot about a week and a half before trial, and Fontenot's counteroffer). Although Safety Council's proposal increased Fontenot's annual base salary and removed Safety Council's ability to terminate the contract without cause, the Court notes that Safety Council would have owed Fontenot over a year and a half in compensation if it had terminated her without cause during the first half of the contract, under her previous contract. *Compare* 2017 Employment Contract Proposal by Safety Council (Rec. Doc. 173-1) at 72–77 (Defendant's Tr. Exh. 35, admitted Oct. 25, 2017) (hereinafter "Safety Council's 2017 Employment Contract Proposal") *with* Fontenot Employment Contract (Rec. Doc. 172-1) at 22–23.

further reduction of the award to present value would be necessary, based on its calculation of a 0% discount rate.[203]

Therefore, the Court finds support for an award of front pay in the amount of $232,000, as equitable relief in lieu of reinstatement. This amount of front pay is equal to the amount that the Court found sufficient for the jury to award $116,000 relating to the termination of Fontenot's contract plus an additional equal amount as liquidated damages. Accordingly, even if the jury's damages award was not based on substantial evidence, the Court nevertheless finds that a total award of $240,000 would be warranted, including $232,000 as two years of front pay, $4,000 for the reduction in bonus, and $4,000 in liquidated damages.[204]

---

[203] In the ADEA context, the Fifth Circuit has held that the "below-market-discount method" is the proper way "to calculate damages resulting from lost future earnings." *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 622 (5th Cir. 1996). Using this method, the Court "must calculate a future 'income stream' amount by estimating the wage increases the plaintiff would have received each year as a result of all factors other than inflation," and then apply a "below-market discount rate" to account for the effects of inflation. *Id.* at 622–23. The Court has already determined that $116,000 fairly represents Fontenot's annual compensation under her previous contract. Based on the short amount of time considered in this analysis, the history of Fontenot's raises as COO, and the fact that Fontenot's prior employment contract did not include an annual increase in any form of compensation, the Court considered that it is not sufficiently likely that Fontenot would receive a raise within the next two years. Therefore, the Court determines that Fontenot's income stream over the next two years would have been $116,000 per year. Next, in order to determine a below-market-discount rate, the Court must determine the market discount rate. The Court determines the appropriate discount rate "based on returns from the safest available investments." *Id.* at 622 (citing *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 537–38 (1983)). In the bankruptcy context, the Fifth Circuit considered the appropriateness of the bankruptcy court's calculation of the discount rate by comparing it to the interest rate of Treasury bonds that mature over the same time as the period of time at issue. *Matter of Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1169 (5th Cir. 1993). The Fifth Circuit assumed that Treasury bonds contained "zero risk" because they are backed by the United States Government. *Id.* at 1169 n. 49. Therefore, the Court looked at the available data over the past nine months to determine an average of the interest rate on a two-year Treasury bond (2.182%) and an average of the inflation rate (1.975%), and found an average difference of 0.207%. *See Resource Center: Daily Treasury Yield Curve Rates*, U.S. DEPARTMENT OF THE TREASURY, https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2018 (last visited July 24, 2018); *Databases, Tables & Calculators by Subject*, U.S. DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, https://data.bls.gov/timeseries/CUUR0000SA0L1E?output_view=pct_12mths (last visited July 24, 2018). Finding the difference negligible and considering the speculative nature of calculating future interest and inflation rates, a 0% discount rate would be appropriate.

[204] Under either alternative, Fontenot is entitled to $4,000 in damages for the reduction in bonus and an additional $4,000 in liquidated damages relating to that reduction.

#### IV. Conclusion

The Court finds that sufficient evidence exists in the record to support the jury's finding that Safety Council took adverse employment actions against Fontenot because she engaged in EPA-protected activity, in violation of the EPA as incorporated into the FLSA, 29 U.S.C. § 215(a)(3). The Court further finds that sufficient evidence of damages was introduced to support the jury's award of $120,000. The Court further finds that liquidated damages are mandatory for the entirety of the jury's award because Safety Council has not made the requisite showing under 29 U.S.C. § 260. Alternatively, the Court finds that even if it did not award Plaintiff liquidated damages, the Court would award the same total amount as front pay. Finally, the Court finds that Fontenot is entitled to post-judgment interest attorney's fees, and costs. Accordingly,

**IT IS HEREBY ORDERED** that Safety Council's "Renewed Rule 50(b) Motion for Judgment as a Matter of Law or Alternatively Rule 59(e) Motion for Remittitur"[205] is **DENIED**.

**IT IS FURTHER ORDERED** that Fontenot's "Motion for Liquidated Damages"[206] is **GRANTED**.

New Orleans, Louisiana, this 29th day of August, 2018.

_Nannette Jolivette Brown_
NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---

[205] Rec. Doc. 182.

[206] Rec. Doc. 185.